CASE 23—EQUITY—JUNE 16.

# Mercer National Bank of Harrodsburg v. Hawkins & Co.'s Assignee.

### APPEAL FROM WOODFORD CIRCUIT COURT.

1. GRAIN ELEVATORS—PRIVATE—WAREHOUSE RECEIPTS PASS NO TITLE.—A warehouse receipt issued by the owner of a grain elevator, who has not complied with the terms of the act of April 28, 1880, entitled "An act to regulate public grain warehouses in this Commonwealth," does not vest a creditor with a lien upon any portion of the grain stored therein unless the grain described is separated from the mass and marked for identification.

2. WAREHOUSE RECEIPTS—TENANCY IN COMMON.—Such a warehouse receipt does not operate to make the holder a tenant in common with the owner.

3. ASSIGNEE OF WAREHOUSE OWNER—EQUITY.—A court of equity administering an estate assigned for the benefit of creditors will not afford relief to the holder of such warehouse receipt.

BELL & BELL AND THOMPSON FOR APPELLANT.

1. Appellant, by the contract between itself and Hawkins & Co., became the owner and holder of the wheat in pledge. Acts April 28, 1880, Gen. Stat., p. 1266; Mar. 6, 1869, Acts 1869, vol. 1, p. 56; or under the common law.

2. A pledge or hypothecation is governed by the same rules of construction, as an absolute sale at common law, except that the receipts are placed on the footing of bills of exchange. Newcomb, &c., v. Cabell, &c., 10 Bush, 460; Cochran & Fulton v. Ripy, &c., 13 Bush, 495; Ferguson v. Northern Bank, 14 Bush, 555; Act April 28, 1880.

3. The failure of Hawkins & Co. to comply with the terms of the act of 1880 did not rob their elevator of its character as a public elevator.

4. The case of Ferguson v. Northern Bank, *supra*, is distinguished from the case at bar in this; in the former the property, hams, was susceptible of distinguishing marks while in the latter wheat is not.

5. The common law distinguishes two classes of cases. First, property capable of distinct designation by marking and segregation, and, second, things forming part of a common ·mass, all the specific particles being of the same kind and quality. In the latter·class a symbolical delivery will pass both title and possession.

6. The contract is clearly within the act of 1869, heretofore cited.

7. The contract is good at common law. Pettit v. First National Bank, 4 Bush, 334; Thompson v. Brannin, &c., 15 Ky. Law Rep., 36; Eckler v. Taylor, 1 Ky. Law Rep., 58; Wells v. Maley, 6 Ky. Law Rep., 77; Owens v. Dixon, &c., 11 Ky. Law Rep., 902; Trimble Bros. v. Laidlet.& Co., 12 Ky. Law Rep., 389; Hall v. Com., 13 Ky. Law Rep., 399; Neighbors v. Holt, 14 Ky. Law Rep., 237; Whitehouse v. Frost, 12 East, 614; Woodbury v. Coventry, 2 H. & C., 164; Knight v. Wiffin, L. R., 59 B., 660; Jackson v. Anderson, 4 Taunt., 24; Hurff v. Hires, 40 N. J. L., 593; s. c., 29 R., 282; Gillet v. Hill, 2 C. & H., 530; Marvin v. Wallace, 6 E. & B., 726; Beaumont v. Brengeri, 2 C. & B., 301; Cassel v. Swooder, 6 H. & N., 826; 6 Am. L. R., 450; Fugit v. Alcorn, 12 Mich., 328; Carlin v. Davis, 8 Allin, 94; Young v. Myles, 20 Wis., 615; Newhall v. Hangton, 39 Ohio St., 92; s. c., 48 R., 426; Wilkerson v. Stuart, 25 Pa. St., 260; Hutchison v. Com., 1 Morris, 472; Wade v. Moffett, 31 Ill., 110; s. c., 74 Am. Dec., 79; Cahill v. Linley, 39 Ill., 195; O'Keefe v. Lelling,. 15 Ill., 347; Holloway v. Burges, 34 Ill., 193; Chapman v. Shepherd, 39 Conn., 430; Walton v. Chase, 37 Me., 414; Gardner v. Dulch, 9 Mass., 427; Horr v. Barker, 8 Cal., 603; 70 Am. Dec., 791; Smith v. Friend, 15 Cal., 124; Story on Sales, secs. 311, 312; Chitty·on Pl., 150, 152; 2 Saunders, 873; Penn. R. Co. v. Hughes, 39 Pa. St., 521; 1 Hill on Torts, 53; Walls v. Henry, 13 Fla., 535; Nat. Ex. Bank v. Wilder, 34 Minn., 182; Ardenger v. Wright, 38 Ill., 101; O'Dell v. Leyda, 20 N. E. R., 473 (Ohio); Walls on Replevin, secs. 203, 205; Inglewright v. Hammond, 19 O. St., 337; s. c., 53 Am. Dec., 430; Wharton on Agency, sec. 240; 6 Am. Law Rev., 469; Shindler v. Westover, 99 Ind., 399; Ledyard v. Hibbard, 48 Mich., 421; s. c., 42 R., 474; Sexton v. Braham, 53 Ia., 181.

8. Whether the bank's pledge was good at law it was valid between it and Hawkins & Co., and their assignee occupies no better attitude. Chenault v. Bush, 84 Ky., 521; Bank v. Payne, 86 Ky., 446; Longdale Iron Co. v. Swift Iron, &c., Co., 12 Ky. Law Rep.,

848; Swigert v. Bank of Ky, 17 B. M., 268; Hanson v. Buckner's
Exr., 4 Dana, 251.

9. The banks are entitled to share, *pro rata,* with the general credit-
·ors for the balance of their debts after crediting the note by the
proceeds of the pledged wheat. Logan v. Anderson, 18 B. M., 118;
Hibler v. Davis, 13 Bush, 21.

THOS. C. BELL IN A SUPPLEMENTAL BRIEF FOR APPELLANT.

Distinguished:   Hunter v. Hutchison, 7 Barr, 140; Scudder v.
Worster, 11 Cush., 573; VanMeter v. Spurrier, 94 Ky., 22; and
Wood v. McGee, 7 Ohio, 466 cited by counsel for the appellee;
and made the following additional citations:   Hood v. Winsatt,
1 B. M., 209; Honore v. Bakewell, 6 B. M., 72; Muir v. Cross, 10
B. M., 281; Bank of Am. v. McNiel, 10 Bush, 60.

D. L. THORNTON FOR THE ASSIGNEE OF HAWKINS & CO., APPELLEE.

· (E. P. CAMPELL OF COUNSEL.)

1. The receipts executed by Hawkins & Co. were inoperative to pass
title to the wheat for lack of identification of the wheat.   Act
March 6, 1869; Cochran, &c., v. Ripy, 13 Bush, 495; Ferguson,
&c., v. Northern Bank, 14 Bush, 555; Chitty on Contracts, 11 Am.
ed., 524; Benjamin on Sales, 4th Am. ed., vol 1, 310; Hunter v.
Hutchison, 7 Barr, 140; Golder v. Ogden, 15 Pa. St., 528; Scudder
v. Worster, 11 Cush., 573; Waldo v. Belcher, 11 Iredell, 609;
Woods v. McGee, 7 Ohio, 466.

2. Hawkins & Co. did not bring themselves within the act of April
28, 1880.   Vannoy v. Patton, 5 B. M., 249; Murphy v. Simpson, 14
B. M., 337; Creekmore v. Chitwood, 7 Bush, 318; Vanmeter v.
Spurrier, 94 Ky., 22; Miller v. Post, 1 Allen (Mass.), 434.

3. If the liens by warehouse receipt be valid, the holders of same
must share, *pro rata.*   Dows v. Elkstrone, 3 Fed. R., 19; Eggers
v. Nat. Bank of Com., 40 Minn., 182.

BELL & BELL, IN A PETITION FOR A REHEARING.

Whether the warehouse receipts executed in this case be
viewed as falling under the act of '69 or '80, it is equally true
that they are governed by the common law.   The only authority
against this contention is the dictum of the court in the Fer-
guson case.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

This appeal involves the question as to whether or not certain papers called "warehouse receipts," which J. C. Hawkins & Co., owners of an elevator at Burgin, Ky., issued to appellant, evidence or constitute a sale in pledge of certain wheat which belonged to them, and which was in their elevator. Two of the receipts purport to hypothecate 8,000 bushels of No. 2 wheat, each, and each hypothecation is for the payment of $5,000. The other purports to pledge 10,000 bushels to secure the payment of $6,000. Hawkins & Co. also issued warehouse receipts to various banks purporting to pledge or hypothecate wheat in their elevator to secure the payment of stipulated sums. The wheat described in all of the receipts was No. 2 in quality, and all in the elevator was of that quality. None of the lots pledged were separated and set apart at the time the warehouse receipts were issued, nor was it subsequently done. The wheat was in a common mass. When Hawkins & Co. made an assignment, it was ascertained that there was not as much wheat in the elevator by many thousand bushels as was covered by the various warehouse receipts. From the view we have of this case, it is useless for us to go into detail as to the dates of the various warehouse receipts, and the amount of wheat actually in the elevator at the time of their issue. J. C. Hawkins & Co. did not have a public grain elevator or warehouse. They did not comply, or attempt to comply, with the act of April 28, 1880, entitled "An act to regulate public grain warehouses in this Commonwealth." They had never procured a license to transact business under the provisions of that act; neither did they receive grain for storage. The grain in the elevator which they attempted to pledge to secure the various sums·

to the banks belonged to them. The court below, in effect, held that the banks did not acquire title to the wheat which was described in the warehouse receipts, and that they did not have a lien thereon. It treated them as general creditors in the distribution of the estate. There was more than sufficient wheat on hand to pay the sums due the appellant, but insufficient to pay all the amounts due the banks.

Counsel for appellant claims that the proceeds of the wheat should be applied to the payment of its debts. The wheat described in the receipts was not designated by marking and segregation. It remained in the common mass, and for that reason the assignee claims the banks acquired no interest in or lien upon it by virtue of the warehouse receipts. On the other hand, it is claimed that, as the wheat pledged was part of a common mass, all the specific particles of the mass being of the same kind and quality, and it having been the intention of the parties to pledge to the payment of the debts the quantities described in the receipts, it was not necessary to segregate and mark the quantities in order to give the banks an interest in or lien thereon.

Counsel for appellant has evidently expended much labor in his research to ascertain the rule of the common law with reference to the sale, or sale in pledge, of property, and ably argues that this court accept as correct his claim that at common law and under the act of 1869 it was not necessary, to render valid a sale in pledge, that the various quantities of wheat described in the receipts should have been segregated and designated by mark. The question involved in this case was fully considered and elaborately discussed in the case of Ferguson v. Northern

Bank of Kentucky, 14 Bush, 555. The view which the plaintiff urged in this case was considered fully in that case. While counsel seeks to distinguish this case from the Ferguson case, it must be admitted that all material questions which are made by him in argument are fully considered and discussed in that case. The court in that case said that the act in relation to warehousemen and warehouse receipts, approved March 6, 1869 (Acts 1869, vol. 1, p. 56), was declaratory of the common law, which required that, where property was sold, which was a part of the large bulk or mass of articles that required separation, no title passed until the separation was had. The court also held that under the act of 1869 it was necessary to the validity of a warehouse receipt issued under its provisions on property which was a part of the common mass that it had to be segregated and designated by some mark, and, if this was not done, the holder of a receipt acquired no right under it. Under the rule of the common law and under the act of 1869 as adjudged in the Ferguson case, the warehouse receipts issued to the appellant are invalid, because the property was not separated and designated by mark.

Counsel contends the absolute sale of part of the common mass passes the title and possession to the receipt holder as tenant in common with the holders of the balance of the mass, or in severalty when it is the intention of the parties to so pass title and possession. As we have indicated before, the Ferguson case is to the effect that the receipt did not amount to a sale or pledge of the wheat. In that case the court discussed the question of the interest of tenants in common in property in a common mass, and said: "If a part of the hams had been wrongfully taken by a mere tres-

passer, the appellees could not have maintained an action in their own name, because they had no separate and distinct interest, and were neither vested with the title nor the right of possession; and to hold they could sue jointly with Krauth, Ferguson & Co. would create them tenants in common, when such was not the contract of the parties, or intended at the time that the one should own in common with the other. The grocer would hardly suppose, when he sold to his customer one gallon of oil, to be taken out of a particular barrel, or the grain dealer, upon a sale of 50 bushels of wheat from his bin, that the vendees became owners in common, and were vested with the title and the right to a separation of their interests. Such can not be the effect of a mere sale of chattels; and because a party may, by contract, become a tenant in common with the owner, is no argument that the vendee acquires title in a case like this."

It is contended that Hawkins & Co.'s assignee stands in the same attitude as their assignor, and, as the rights which the warehouse receipts gave the banks could have been enforced as against Hawkins & Co., if not at law in equity, therefore they are enforceable against the assigned estate. This identical question was adjudged in the Ferguson case. The court said: "It is insisted, however, by counsel, that a court of equity will relieve because a court of law, by reason of the insolvency of the vendor, can not give adequate relief. If no title or interest passed to the vendee, there can be no equitable lien; and to enforce the specific performance of a contract in the case of a chattel, if a court of equity will take the jurisdiction, there is as much necessity for identifying the property as in an action at law. * * * The question in this case is, were the

[12]

hams described in the receipts actually sold or pledged? If no title or possession passed at law, none could in equity. There must be some equitable interest or title, else a court of equity can not decree a specific execution." The Ferguson case was decided February 19, 1879, and the Legislature evidently had under consideration the opinion of the court in that case when it passed the act of 1880 to regulate public grain warehouses. The first section of the act reads as follows: "That public grain elevators, warehouses and granaries in this Commonwealth shall embrace those in which grain is stored in such a manner as that the identity of different lots can not be preserved." This act enables persons desiring to store wheat in a public elevator, warehouse, or granary to do so and obtain a warehouse receipt therefor. When it is thus delivered to a public warehouseman its identity need not be preserved in order to make valid a receipt which the proprietor may issue therefor. Had Hawkins & Co. been licensed to keep a public grain elevator, and conduct their business as required by the law regulating its conduct, the appellant and other bankers would not have, in all probability, suffered the losses which they sustained. In view of the fact that we have reached the conclusion to adhere to the doctrine announced in the Ferguson case, it is unnecessary to extend this opinion further. The judgment is affirmed