FIRST NAT. BANK OF PITTSBURGH, PA., v. GUARANTEE TITLE & TRUST CO.

GUARANTEE TITLE & TRUST CO. v. FIRST NAT. BANK OF PITTSBURGH, PA.

(Circuit Court of Appeals, Third Circuit. February 15, 1910.)

Nos. 29, 30 (1,276).

1. BANKRUPTCY (§ 184*)—TRANSFERS OF PERSONAL PROPERTY—VALIDITY AS AGAINST TRUSTEE—LAW GOVERNING.

Whether a conditional contract of sale, chattel mortgage, or pledge of personal property is valid as against the general creditors of the vendee, mortgagor, or pledgor, or his trustee in bankruptcy, must be determined by the local laws of the state in which the transaction took place.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*]

2. BANKRUPTCY (§ 207*)—TRANSFERS OF PERSONAL PROPERTY—VALIDITY AS AGAINST TRUSTEE.

Under the law of Pennsylvania, a bill of sale of personal property absolute in form, but in fact given to secure an indebtedness, where the property remained in the possession of the debtor from which it was taken by a receiver in insolvency appointed under the state law, was invalid as against such receiver who was vested with the rights of a levying creditor; and where within four months the debtor was adjudged a bankrupt under Bankr. Act. July 1, 1898, c. 541, § 67c, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), which provides that a lien created by or obtained in or pursuant to any suit or proceeding at law or in equity within four months preceding bankruptcy, if its dissolution would militate against the interests of the estate, shall not be dissolved, but the trustee shall be subrogated to the rights of the holder, the right and title of the state receiver in the property covered by such bill of sale became vested in the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 207.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** BANKRUPTCY (§ 207*)—LIENS ACQUIRED BY LEGAL PROCEEDINGS—DISSO-
LUTION BY ADJUDICATION—CONSTRUCTION OF STATUTE—"SUCH LIEN."

In the last sentence of Bankr. Act 1898, c. 541, § 67c, 30 Stat. 564 (U.
S. Comp. St. 1901, p. 3449), providing that, "if the dissolution of such
lien" would militate against the interests of the estate of the bankrupt,
it shall not be dissolved by the adjudication, but the trustee shall be sub-
rogated to the rights of the holder, the words "such lien" refer to any
lien "created or obtained in or pursuant to any suit or proceeding at law
or in equity" within four months mentioned at the beginning of the sub-
division and the provision applies to liens obtained for the benefit of all
creditors as well as those obtained for the benefit of one creditor, to which
clauses 1, 2, and 3 alone relate. As so construed, such subdivision is not
in conflict with subdivision f of the same section.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 207.*]

**4.** PARTNERSHIP (§ 255*)—DISSOLUTION—DEATH OF PARTNER—POWERS OF SUR-
VIVING PARTNER. .

On the death of one of two partners, in the absence of provision other-
wise in the partnership agreement or by will of the deceased, the part-
nership terminates, and the surviving partner cannot continue the busi-
ness and bind the estate of the deceased partner by new contracts.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 552–561;
Dec. Dig. § 255.*]

**5.** BANKRUPTCY (§ 172*)—TRANSFERS OF PROPERTY—RIGHTS OF TRANSFEREE.

A partnership made an assignment of all its book accounts, both present
and future, to secure an indebtedness, but retained the books, and handled
the accounts as before. Subsequently one of the partners died, and the
survivor continued the business in the firm name, collecting old and creat-
ing new accounts until he was adjudicated a bankrupt. The trustee col-
lected a number of accounts, all of which, however, had been made after
the death of the partner. *Held* that, regardless of the question of the
validity of the assignment, it did not cover the accounts so collected by
the trustee, which did not belong to the partnership, and gave the as-
signee no right to the fund realized.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 172.*]

Buffington, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the West-
ern District of Pennsylvania.

In the matter of Jonathan A. Perley, surviving partner of the
firm of Perley & Bro., bankrupt. On petition of the First National
Bank of Pittsburgh, Pa., against the Guarantee Title & Trust Company,
trustee. From the order both parties appeal. Affirmed on creditors'
appeal, and reversed on trustee's appeal.

William M. Hall, for First National Bank of Pittsburgh, Pa.

W. A. Way and John M. Ralston, for Guarantee Title & Trust Co.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge. The essential facts of this case are
these: On June 18, 1904, Jonathan A. Perley and Maurice B. Perley,
copartners in business trading under the name of Perley & Bro., exe-
cuted and delivered to the Industrial National Bank of Pittsburgh an
instrument in writing, by which they assigned to the bank all their book

accounts and accounts receivable contracted in and about their business, as paper dealers in Pittsburgh, together with all their future book accounts and accounts receivable, as collateral security for all notes and obligations upon which they or either of them might at any time thereafter be liable to the bank. On September 22, 1904, they also executed and delivered to the bank a bill of sale, absolute in form, for certain specifically described machinery, which the bill of sale declared was then situated and contained in their warehouse and place of business at 111 Second avenue, Pittsburgh. Maurice B. Perley died December 15, 1905. At the date of his death the firm owed the bank $88,335.42. Jonathan A. Perley, who continued the paper business after the death of Maurice under the name of Perley & Bro., increased the indebtedness to the bank until January 17, 1906, when it amounted to $91,835.22. On the last-mentioned date the Industrial National Bank assigned the notes and obligations representing this indebtedness and the bills of sale of the book accounts and machinery above mentioned to the First National Bank of Pittsburgh, which last-mentioned bank, one of the parties to this proceeding, from time to time renewed the Perley & Bro. paper, and took other paper of the same kind, until September 12, 1906, when the total indebtedness amounted to $94,319.17, and when, on a creditors' bill in a state court alleging insolvency, a receiver was appointed "for Jonathan A. Perley, surviving and liquidating partner of the firm of Perley & Bro." On September 29, 1906, a petition was filed in the bankruptcy court on which on November 16, 1906, "Jonathan A. Perley, surviving partner of the firm composed of Jonathan A. Perley and Maurice B. Perley, trading as Perley & Bro., was adjudged bankrupt," and thereupon the Guarantee Title & Trust Company was appointed receiver in bankruptcy, and subsequently trustee of the bankrupt's estate. The trustee sold the machinery described in the bill of sale of it for the sum of $8,800, and now holds that sum subject to such disposition thereof as the court shall direct. The trustee also has in hand the sum of $17,329.40 of moneys collected by it from the book accounts. It should be added that, after the death of Maurice B. Perley, Jonathan removed the machinery to a new place of business, and that on September 5, 1906, one week before the creditors' bill was filed in the state court, but after the whole of the indebtedness of $94,319.17 had been created, the bank served on Jonathan A. Perley a notice that it then took possession of the machinery and book accounts assigned to it as collateral, but that no attempt was made by the bank to identify, set apart, remove, or take actual possession of the machinery or of the books of account. On these facts and the law of the state of Pennsylvania as applied to them the referee decided that the proceeds of the sale of the machinery, $8,800, belonged to the trustee in bankruptcy, and that the proceeds of the book accounts, $17,329.40, belonged to the bank. The district court affirmed this decision. Each of the parties now appeals.

Whether a conditional contract of sale, chattel mortgage, or pledge of personal property is valid as against the general creditors of the vendor, mortgagor, or pledgor, or his trustee in bankruptcy, must be

determined by the local laws of the state in which the transaction is had. Bryant v. Swofford Bros., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. In the case at bar, the pledge of the machinery as security for the indebtedness to the bank was executed two years before the commencement of the bankruptcy proceedings, but the bank had never taken possession of the machinery. By the appointment of a receiver by the state court on September 12, 1906, upon a creditors' bill, on the ground of insolvency, the receiver became vested with the rights of a levying creditor. Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207, 62 Atl. 841. By the law of the same state, delivery of possession of personal property capable of physical possession is indispensable to transfer a title which shall be good against creditors of the vendor who have acquired liens on such property while in the vendor's possession. White v. Gunn, 205 Pa. 229, 54 Atl. 901. In Clow v. Woods, 5 Serg. & R. (Pa.) 278, 9 Am. Dec. 346, Justice Gibson said:

"I take it, where the motive of the sale is merely security to the vendee, and the owner is permitted to retain all the visible marks of ownership for no other reason than the convenience of the parties, the contract will be void, although the reasons for the arrangement be inserted and the possession be consistent with the deed. The law will not and ought not to permit the owner of personal property to create an interest in another, either by mortgage or absolute sale, and still continue to be the ostensible owner."

This rule was confirmed in Barlow v. Fox, 203 Pa. 114, 52 Atl. 57. The principle on which it was founded was recognized and enforced by this court in Fourth St. Nat. Bank v. Millbourne Mills Co.'s. Trustee, 172 Fed. 177, 96 C. C. A. 629. In the case at bar it should be remembered, too, that the bill of sale for the machinery was absolute in form, and did not by its terms in any wise indicate that it was intended as a mortgage or pledge of the machinery to secure a debt.

It must be conceded then, we think, that between September 12, 1906, when the receiver was appointed by the state court, and September 29, 1906, when the bankruptcy proceedings were commenced, the claim of the bank was subordinate to that of the receiver appointed by the state court. The question is whether the lien which that receiver had passed to the trustee in bankruptcy. That question is to be determined by the bankruptcy act.

Section 67c of the bankruptcy act is as follows:

"A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act; or if the dis-

solution of such lien would militate against the best interests of the estate of such person the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened." Act July 1, 1898, c. 541, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449).

The lien obtained by the receiver appointed by the state court was in a proceeding in equity begun against Jonathan A. Perley within four months before the filing of the petition in bankruptcy against him. It is obvious, therefore, that the lien may have been dissolved by the adjudication of bankruptcy if it was such a lien as is described in clause 1, clause 2, or clause 3 of the first sentence of 67c. We think each of these clauses refers to a lien obtained in a proceeding at law or in equity for the benefit, not of the bankrupt's creditors in general, but of one or more creditors less than all of them. If such be the proper construction of the first sentence of the section, it follows that the lien was not dissolved by force of any of its three clauses. But the second sentence of the section provides that, if the dissolution of "such lien" would militate against the best interests of the estate of the bankrupt, the lien shall not be dissolved, but that the trustee shall be subrogated to the rights of the holder of the lien and empowered to perfect and enforce it as such holder might have done "had not bankruptcy proceedings intervened." If bankruptcy proceedings had not intervened, the receiver appointed by the state court could have perfected and enforced his lien. We think the words "such lien," in the second sentence of 67c, refer to any "lien created by or obtained in or pursuant to any suit or proceeding at law or in equity." mentioned at the beginning of the section, and not merely to a lien described by the language of clause 1, clause 2, or clause 3. It is not the intent of the section to dissolve a lien where its retention will benefit the general body of the bankrupt's creditors.

It has been suggested, however, that sections 67c and 67f are in such conflict that both of them cannot stand, and that 67f must stand as the later declaration of the legislative will. Indeed, such conflict was held to exist by the Circuit Court of Appeals for the Seventh Circuit in the Richards Case, 96 Fed. 935, 37 C. C. A. 634, and by the District Court in the Tune Case (D. C.) 115 Fed. 906. The part of 67f material to the present inquiry is as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

In so far as 67c is in conflict with 67f, the former is doubtless superseded by the latter section. But, if our construction of 67c is correct,

the lien now under consideration was not dissolved by any of its provisions, but, on the contrary, it was preserved, and the trustee, by operation of law and without any intervening court order, subrogated to the rights of the former receiver. Section 67f does not conflict with this view of 67c. Section 67f, like clauses 1, 2, and 3, of the first sentence of 67c, relates only to liens obtained for the benefit of less than all of the bankrupt's general creditors, and not to a lien which benefits all the creditors and the dissolution of which will result in giving priority to particular creditors. A trustee in bankruptcy is not by 67f subrogated by mere operation of law to the rights of a levying creditor. He must obtain an order of court preserving the rights of the levying creditor for the benefit of the bankrupt's estate, as was done in First National Bank v. Staake, 202 U. S. 148, 26 Sup. Ct. 580, 50 L. Ed. 967. There the Supreme Court, after quoting both 67c and 67f, and without intimating that 67c is superseded by 67f, upheld the lien of an attachment levied on lands which the defendant in attachment had conveyed, and against whom bankruptcy proceedings were commenced within four months after the levy, not for the benefit of the attaching creditor, but for the benefit of the trustee in bankruptcy who thereby acquired priority over the grantee's unrecorded deed. Referring to the statement often made that a trustee in bankruptcy stands in the shoes of the bankrupt, the court said that the rule that the trustee takes the estate of the bankrupt in the same plight as the bankrupt held it is not applicable to liens which, although valid as to the bankrupt, are invalid as to creditors.

As a lien acquired by a particular creditor may be preserved for the benefit of all creditors under 67f, we see no reason why a lien acquired for the benefit of all creditors, especially where its dissolution will result in giving priority to a particular creditor and thereby militate against the best interests of the general body of creditors, should not be preserved under 67c. The fact that the appointment of the receiver by a state court is the very act of bankruptcy charged in the bankruptcy proceedings is immaterial. The policy of the bankruptcy act is to preserve liens where preservation will benefit the general body of the bankrupt's creditors.

We conclude, therefore, that the trustee was subrogated to the rights of the receiver; that his rights in the machinery, and in the $8,800 produced by its sale, were superior to the rights of the bank; and that as to those proceeds the judgment of the district court should be affirmed.

The remaining question has to do with the assignment of the book accounts. In our view of the case, it is not necessary to consider whether under the law of the state of Pennsylvania an assignment of all the assignor's future book accounts, without limit as to time, as security for present and future indebtedness to the assignee, without limit as to amount, may be enforced in equity against the creditors of the assignor, or against the assignor's trustee in bankruptcy. In the present case the book accounts were assigned to the bank by the firm of Perley & Bro. in the lifetime of Maurice B. Perley. When

Maurice died, the partnership died. The survivor collected the pledged accounts, and put the moneys into the same kind of business that the partnership had been carrying on, but not into the business of the same partners. He put those moneys either into his own individual business or into a partnership business in which the partners were himself and one or more of the beneficiaries or representatives of his deceased brother's estate. If such a partnership existed, it was a new one. The accounts collected by the receiver in bankruptcy and the trustee in bankruptcy, aggregating $17,329.40, were collected from accounts created after Maurice's death. The referee, it is true, finds that the survivor of the two brothers was carrying on the former partnership business as surviving and liquidating partner. The record of the case shows, also, that the receiver appointed by the state court was receiver "for Jonathan A. Perley, surviving and liquidating partner of the firm of Perley & Bro," and that the bankruptcy court rendered an adjudication of bankruptcy against "Jonathan A. Perley, surviving partner of the firm composed of Jonathan A. Perley and Maurice B. Perley, trading as Perley & Bro." But the facts show that Jonathan A. Perley was not acting as surviving or liquidating partner. As already stated, Maurice died December 15, 1905. The firm then owed the bank $38,355.42. On January 17, 1906, the indebtedness to the bank had increased to $91,835.22, and on September 12, 1906, to $94,319.17. Was the surviving brother binding the estate of his deceased brother by all his new contracts entered into between December 15, 1905, and September 12, 1906? Was the estate of his deceased brother bound by all the new notes, aggregating $70,625, shown by the record to have been made between December 15, 1905, and September 12, 1906? If the two brothers had in their partnership agreement provided for the continuance of the partnership business after the death of one of them by substituting in the place of the deceased brother his executor, the situation would be very different; but even then the executor would not have been obliged to engage in the business, and, if he did, he would have been personally liable for the debts contracted in the business. Wightman v. Townroe, 1 M. & S. 412; Story on Part. § 70; Wild v. Davenport, 48 N. J. Law, 136, 7 Atl. 295, 57 Am. Rep. 552; Laible v. Ferry, 32 N. J. Eq. 795; Burwell v. Mandeville's Executors, 2 How. 560, 11 L. Ed. 378. It is not suggested that the deceased brother by will or contract authorized the partnership business to be carried on after his death, and therefore the general rule is applicable that the partnership was dissolved when he died.

As it is conceded that the accounts from which the $17,329.40 was collected were created after the death of Maurice B. Perley, they belonged to Jonathan A. Perley individually or to the new partnership created at the time of Maurice's death. The assignment of future book accounts, made by Jonathan and Maurice, could not have included the book accounts from which the collections were made. Consequently the bank is not entitled to the sum collected.

178 F.—13

The judgment of the district court will·be affirmed as to the $8,800 produced by the sale of the machinery. As to the $17,329.40, collected from the book accounts, it will be reversed, and the claim of the bank disallowed.

BUFFINGTON, Circuit Judge, dissents.