FIRST NAT. BANK OF PARIS, KY., et al. v. YERKES et al.

In re HUTCHCRAFT.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1916.)

No. 2845

1. BANKRUPTCY ⬯461—APPEAL—TIME—RENDITION OF JUDGMENT.

As regards time to appeal from the judgment in bankruptcy, brought into the record as an agreed exhibit, it will be regarded as rendered, not on the date appearing at the end thereof, in connection with the judge's signature, but on the filing date there appearing and also recited in the order allowing appeal as the date on which the judgment was rendered.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 920–923; Dec. Dig. ⬯461.]

2. WAREHOUSEMEN ⬯20—RECEIPTS—IDENTIFICATION OF PROPERTY.

No lien was given by warehouse receipts, issued as security by a private warehouseman, for a certain number of bushels of grass seed; he having in his warehouses a greater quantity, and that covered by the receipts not being segregated and identified by mark, as required by Ky. St. § 4769.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 15, 16; Dec. Dig. ⬯20.]

3. BANKRUPTCY ⬯161(1)—PREFERENCE—PRIOR INEFFECTUAL PLEDGE.

The fact that a warehouseman had pledged receipts for grass seed, ineffectual because of the seed not being segregated from the mass and identified, does not prevent delivery of seed by him to the creditor, a few days before bankruptcy, and after there had been shipments from and additions to the seed, from operating as a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261, 262; Dec. Dig. ⬯161(1).]

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

In the matter of R. B. Hutchcraft, bankrupt. From a judgment affirming, on petition for review, the order of the referee sustaining exceptions of W. L. Yerkes, trustee in bankruptcy, and others, to the claim of the First National Bank of Paris, Ky., and another, said creditors appeal. Affirmed.

Emmett M. Dickson, of Paris, Ky., for appellants.

Geo. R. Hunt, of Lexington, Ky., and Robert C. Talbott, of Paris, Ky., for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and SESSIONS, District Judge.

PER CURIAM. R. B. Hutchcraft carried on business as a private warehouseman in Paris, Ky., for some 20 years, and at the times of the transactions here in issue conducted at least four warehouses located in that place. October 30, 1914, Hutchcraft executed and delivered a deed of assignment of all his property to James McClure, reciting that he was "indebted in sundry sums to divers persons, which he is unable to pay in full and is desirous of providing for the payment thereof by an assignment of his property and effects for that

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

purpose not exempt to him by law." November 2d certain creditors of Hutchcraft commenced a bankruptcy proceeding against him in the court below, and on February 2, 1915, Hutchcraft was adjudged a bankrupt; and W. L. Yerkes was selected as trustee of the bankrupt's estate. February 5th an order of reference was made by the court below to the referee in bankruptcy to receive claims against the bankrupt's estate, "to allow or disallow claims, and to pass upon secured and unsecured claims and to adjudicate priorities."

The present controversy arose upon exceptions taken by the trustee and certain creditors to claims filed with the referee by the First National Bank of Paris, Ky., and to liens asserted to secure them. These claims were in form three promissory notes executed by the bankrupt at Paris, Ky., payable at the bank and to its order, and each purported to be secured by a warehouse receipt, executed by the bankrupt, for a named quantity of blue grass seed. The first note, bearing date July 21, 1914, was for $4,000, payable in four months after date, and the warehouse receipt purporting to secure it, No. 127, in terms acknowledged receipt in four different warehouses, "for account of and subject to the order of First National Bank, * * * seven thousand bushels blue grass seed, deliverable only on return and cancellation of this receipt, and payment of all charges and advances due and payable thereon. * * * This receipt is given in pursuance to the Kentucky warehouse law, and is to be governed thereby, as well as by the laws of the United States." The second note, bearing date August 25, 1914, was for $5,000, payable in four months after date, and the warehouse receipt purporting to secure it, No. 126, in terms acknowledged receipt in three of the warehouses named in No. 127, for account of the same bank, "eight thousand bushels stripped and cleaned blue grass seed," and was otherwise in form the same as No. 127. However, it is agreed by the parties that the security in terms given through this warehouse receipt, No. 126, was waived in order to vote the claim at the meetings of the bankrupt's creditors; and, although proof of the claim with this security was filed, as stated, with the referee "as of date May 25, 1915," the court below treated the waiver as effective; indeed, counsel for the bank treats the waiver in the same way. The third note, also bearing date August 25, 1914, was likewise for $5,000, payable four months after date, and accompanied by a warehouse receipt, numbered 130, which in terms acknowledged receipt in the same warehouses as those named in No. 126, for account of the same bank, "eight thousand bushels stripped and cleaned blue grass seed," and in other respects was the same in form as the other warehouse receipts.

June 29, 1915, the referee entered an order disallowing all these notes "as secured claims," and also further disallowing them "as unsecured claims until and unless" the bank "shall first surrender to the trustee" $4,440, which the bank had received from sales of part of the blue grass seed in question, and upon the supposition that the bank held a lien on such grass seed; and the order also requires McClure, as assignee, to pay to the trustee in bankruptcy certain sums, which include $2,031.80 derived from sales made of blue grass seed after

the assignment and held by the assignee for the bank under a like supposition of lien. Upon petition for review the court below affirmed the order of the referee. The First National Bank, in its own behalf, and James McClure, as assignee of Hutchcraft, have appealed from, and have also filed a petition to revise, the order of the court below.

[1] The trustee and the objecting creditors, appellees, have interposed a motion to dismiss the appeal on the ground that it was not taken within 10 days after the judgment of the court was rendered. The date September 15, 1915, appears at the end of the order, or judgment, of the District Court, in connection with the signature of the judge; but the filing date and the signature of the court clerk are shown at the commencement of the judgment under the date September 16th. The apparent reason for so disclosing the dates is that the judgment order was brought into the record as an agreed exhibit, although the exhibit also bears the certificate of the clerk. The appeal was allowed September 27th. It is evident that the appeal was or was not taken within the time prescribed by section 25a of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 553 (Comp. St. 1913, § 9609), according as the 16th or the 15th of September is to be regarded as the date on which the judgment was rendered. If this took place September 15th, the 10 days period within which the appeal might have been taken expired on Saturday, the 25th. If the rendition occurred September 16th, the nominal appeal period ended on Sunday, the 26th, and, according to section 31 of the Bankruptcy Act (Comp. St. 1913, § 9615), was extended to Monday, the 27th, when the appeal was allowed. The natural inference arising from the exhibit which discloses the judgment and the dates in question, as stated, is that the filing date, rather than the other date, there shown indicates the time of rendition of the judgment in accordance with both the appearance docket and the journal of the court.

This view derives support from the order of the court entered September 27, 1915, allowing the appeal and fixing the amount of the appeal bond; it is there stated that the judgment was "rendered on the 16th day of September, 1915," and it is worthy of notice that one of the recitals of the appeal bond states that "on the 16th day of September, 1915, * * * judgment was rendered," etc. There is no apparent reason to believe that the District Judge intended the judgment to become effective until it was regularly filed with the clerk of the court and notation of the filing upon the appearance docket and entry upon the journal had taken place. Hence to treat the date appearing at the foot of the judgment as dominating the express filing date would seemingly be to contradict the journal of the court. The journal imports absolute verity; and it may safely be presumed that the date, September 15th, was written by mistake. In re McCall, 145 Fed. 898, 907, 76 C. C. A. 430 (C. C. A. 6). We therefore conclude that the appeal was seasonably allowed. It should be added that, in view of the issues of fact which were concluded below and are contested here, the remedy sought through the petition to revise was inappropriately chosen; and the petition to revise will, for that rea-

son, as well as in consequence of its inconsistency with the appeal, be dismissed.'

[2] The controlling feature of the case made here is dependent upon questions of fact. These questions concern the identity of the blue grass seed which was described in the warehouse receipts. The description appearing in the first receipt, No. 127, is, as we have seen, simply a stated number of bushels of "blue grass seed" stored in four different warehouses of the bankrupt; and the descriptions contained in the other two receipts state that specified quantities of "stripped and cleaned blue grass seed" are stored in three of the four warehouses named in the first receipt. It appears by the evidence that each of the quantities of seed so specified was kept in bags, but nothing was done in respect of any of the bags themselves, or of the groups in which they were placed, to indicate in whose favor the seed was attempted to be pledged; nor does it appear how much of the seed was contained in any one of the warehouses named. The contention of appellants amounts to a concession, as of course it must be conceded, that identification of the seed was in each instance a necessary part of any valid pledge. The contention, however, is that this requisite was met by the claim that, at the time each transaction in issue took place, all the blue grass seed belonging to the bankrupt and contained in the warehouses named was included in the descriptions appearing in the receipts. True, when seed was stored by strangers in the warehouses of the bankrupt, the practice was to identify the seed by display of the depositors' names upon or about the piles of bags containing the seed; but nothing of this kind was done with respect to seed belonging to the bankrupt. It results that the bankrupt's blue grass seed which was kept in any of the warehouses named in the receipts was identifiable only by the absence of name or token of any sort to indicate ownership; and if it were conceded for present purposes that valid pledges of all such seed might have been made through the execution and delivery of warehouse receipts by appropriate descriptions therein of the seed and the warehouses in which it was stored, still no progress would be gained unless it can safely be said that a serious mistake of fact was made alike by the referee and the trial judge; for, in the course of his opinion, Judge Cochran said:

"The referee has reached the conclusion that there was more blue grass seed in the warehouses when the receipts were given than the quantities called for therein, and such is my conclusion from a careful consideration of the evidence."

Further, and concerning an insistence made by counsel for the bank that the decision below has more far-reaching consequences than are involved in the case itself, there is an obvious hazard in Kentucky of employing private warehouse receipts of the vague character here used which may be illustrated by the two transactions disclosed in the receipts of August 25, 1914, where the same quantity and kind of seed were in each instance thus described: "Eight thousand bushels stripped and cleaned blue grass seed." For, as is pointed out in the opinion below, it has been held by the court of last resort of Kentucky that, as respects pledges made by private warehousemen, part of a

"common mass" of a given commodity, such as No. 2 wheat, must be "segregated and designated by some mark," and that, if this is not, done, the holder of a warehouse receipt merely describing part of the commodity by its classified name acquires no right under the receipt. Mercer Nat. Bank of Harrodsburg v. Hawkins & Co.'s Assignee, 104 Ky. 171, 176, 46 S. W. 717. Concededly this is opposed to the general rule, recently considered by this court, concerning pledges of units of a commodity which are necessarily the equivalent of each other. Interstate Banking & Trust Co. v. Brown, 235 Fed. 32, 40, —— C. C. A. ——.

Apart, then, from the question of fact whether all of the "stripped and cleaned blue grass seed" belonging to the bankrupt and stored in the warehouses named was described in the receipts, it is not perceived how, in view of the rule laid down in the Mercer Bank Case, the First National Bank here secured a lien under either or both of the receipts of August 25, 1914. This is strengthened by the fact that pledges made through the issue of warehouse receipts are in large measure regulated in Kentucky by statute (2 Ky. Stat. [Carroll Ed., 1915] p. 2426, et seq.); and this but accentuates the soundness of the trial judge's ruling that his opinion was governed by the decisions of the Court of Appeals of that state (Security Warehouse Co. v. Hand, 206 U. S. 415, 425, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Taney v. Penn Bank, 232 U. S. 174, 180, 34 Sup. Ct. 288, 58 L. R. A. 558; Dale v. Pattison, 234 U. S. 399, 404, 34 Sup. Ct. 785, 58 L. Ed. 1370, 52 L. R. A. [N. S.] 754; First Nat. Bank v. Guarantee Title & Trust Co., 178 Fed. 187, 189, 190, 101 C. C. A. 507 [C. C. A. 3]).

[3] It is urged that, if the liens intended to be given through the issue of receipts Nos. 127 and 130 (the lien claimed under 126 being waived) failed for lack of constructive delivery of the seed, this defect was subsequently cured to the extent at least of two carloads which were actually delivered to the bank. These two carloads were sold, one on October 26, 1914, for $2,280, and the other on October 29th for $2,160. The sales were made and the seed was shipped to the purchasers at the instance of Hutchcraft and by consent of the bank, given through McClure, its cashier. The bills of lading were issued in the name of the bank, and the sales proceeds were turned over to the bank. The insistence that these transactions were designed to carry into execution the original purpose to pledge the seed overlooks the question whether, at the times the receipts were given and accepted in July and August, 1914, any particular lots of seed were described in the receipts or were segregated from other lots of like seed of the bankrupt, so as to enable the parties in the following October to establish any identity between the seed attempted to be pledged and the two carloads of seed. Both the first quantities of seed and the carloads were equally indeterminate as respects the disputed pledges; and this is destructive of any subsequent delivery theory; indeed, it does not appear that the bankrupt even owned the two carloads of seed at the times the receipts were given. We say this because, in addition to evidence showing the fact, it is frankly ad-

mitted by counsel for the bank that "as a matter of convenience, and in order to carry on his business, he (Hutchcraft) did place other seed in the warehouse while he was not running the cleaner"; and this was after the receipts were given. The shipment transactions, therefore, must be tested with reference to the bankruptcy and the right of the trustee to challenge the validity of the transfer involved on the ground that it amounted to a preference. We observe, in passing, that the facts upon which counsel's contention must be based as to the effect of the shipment transactions, as well as any claim of equitable lien, differ from the controlling facts in Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995, Gage Lumber Co. v. McEldowney, 207 Fed. 255, 124 C. C. A. 641 (C. C. A. 6), and the cases relied on by the bank.

Pursuing the question of preference, it will be recalled that the assignment by Hutchcraft to McClure was made October 30, 1914, the day immediately following the last one of the two shipments in question, and that the bankruptcy proceeding was commenced November 2d, three days after the assignment. McClure was the officer of the bank who conducted the transactions which resulted in the issue of the warehouse receipts and was also the assignee named in Hutchcraft's deed of assignment. Both the referee and the trial judge considered the facts relating to these shipments; both concluded that Hutchcraft was then insolvent, and that the transfer of the two carloads of seed operated as a preference, and that the bank had reasonable cause to believe that it would so operate. Our consideration of the referee's review of the evidence, in connection with Judge Cochran's opinion and our own examination of the record, satisfies us that their conclusions ought not to be disturbed. The present decision is at last rested upon the opinion below, a copy of which (omitting the statement of facts) follows;[1] and the judgment is accordingly affirmed, with costs.

[1] The claim of lien is based on the warehouse receipts hereinbefore mentioned. The bankrupt was a private warehouseman and it was possible for him by means of warehouse receipts to pledge blue grass seed owned by him and in his possession to secure the payment of his notes. The matter is covered by statutory provisions which have been construed by the Court of Appeals of Kentucky. I am governed by the decisions of that court on the subject. Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171.

Section 4769 provides that the receipt shall set forth "the quantity, quality, kind and description thereof, if known" and that the thing for which the receipt is given "shall be designated by some mark." The Court of Appeals has considered the question as to what is essential to be done in order to make the warehouse receipt valid in two officially reported opinions, to wit: Ferguson v. Northern Bank of Kentucky, 14 Bush (Ky.) 555, 29 Am. Rep. 418; Mercer National Bank v. Hawkins, 104 Ky. 174, 46 S. W. 717.

In the Northern Bank of Kentucky Case the receipts had been given for sugar-cured hams, in one instance for 3,600 and the other 8,250. These were not all the hams in the warehouse. All that were therein were in mass and all marked "Krauth, Ferguson & Co. Eclipse." It was held that they passed no title. Judge Pryor said that the brand on each of the hams was "not the mark or distinguishing feature required," and that "it must be such as will enable the party to identify the property and to distinguish it from a similar kind and quality; such is the plain purpose of the statute." He added: "If there were no other hams in the warehouse with the same trade-mark on

them than those contained in the receipt, the description would be sufficient." In the Mercer National Bank Case the receipts were given for specific quantities of No. 2 wheat, part of a common mass. It was held that they passed no title. The court followed the decision in the earlier case and stated that it was therein held that in case of a receipt issued "on property, which was a part of a common mass, it had to be segregated and designated by some mark."

There is nothing left to do but to apply this law to the facts of this case. The petitioners rest their case on the position that when the receipts in question were given the blue grass seed covered by them was all the blue grass seed in the warehouses; i. e., when the receipt for 7,000 bushels was given there was no more than that much therein, and when the two receipts for 8,000 bushels each were given there was no more, in addition to the 7,000 bushels, than 16,000 bushels. They think that thereby they bring the case within the dictum of Judge Pryor in the Northern Bank of Kentucky Case. They seem to concede that subsequent to the giving of the receipts other blue grass seed was placed in the warehouses and mingled with that covered by the receipts, and that thereafter blue grass seed was taken from the common mass and sold or loaned. It cannot be said that Judge Prior had such a case in mind when he uttered this dictum, or any other case than one where the receipt covers all the article in the warehouse at the time it is given and there has been no subsequent change in the quantity therein. The trustee contends that, even if petitioner's contention is right as to the facts, and no other blue grass seed was subsequently placed in the warehouse (i. e., conditions remained as they were when the receipts were given), still the seed covered by the different receipts should have been segregated 'from each other by mark and there is some force in this position.

But I do not have to go into these questions. It is not the fact that the receipts covered all the blue grass seed in the warehouses when they were given. The bankrupt testified that he had on hand in July and August, 1914, 60,000 or 70,000 bushels, that at the time he issued the receipt for 7,000 bushels he had a great many more bushels, and that when he issued the receipts in August he had an amount much larger than that. These statements are borne out by the books of the bankrupt. I do not find it necessary to go further into details of the testimony on this point. The referee has reached the conclusion that there was more blue grass seed in the warehouses when the receipts were given than the quantities called for therein, and such is my conclusion from a careful consideration of the evidence. This being so, and the quantities covered by them not being segregated from the common mass by designated mark or otherwise, the receipts passed no title. The matter is not affected by the consideration that the bankrupt always asked the bank's consent to what he did in relation to the seed in the warehouses. The case is clearly controlled by the two decisions of the Kentucky Court of Appeals.

It may be thought that the bank acquired a claim to the two shipments made in latter part of October, 1914, by reason of the bills of lading being made in its name. But the bankrupt was then insolvent, the transfer of the seed to the bank operated as a preference and the bank then had reasonable cause to believe that it would so operate. The bankrupt's credit was impaired by the failure of the Alexander Bank in the spring of 1914 and the large claims asserted against the bankrupt by reason of his directorship in that bank. Theretofore the petitioning bank had loaned him money on the notes of which the two given in August were renewals without security. When it made the loan of $4,000 in July and renewed the two $5,000 in August it required security. Before these two shipments it allowed the bills of lading to be made in the bankrupt's name and him to collect the proceeds. The placing of the bills of lading in its name for these two shipments happened just on the eve of the assignment and the assignment was made to the bank's cashier.

I am therefore constrained to affirm the order of the referee.