## THE WASHINGTON.

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 61.

1. **Admiralty ☞108—Clerk's failure to enter decree on date delivered to him held misprision, amendable by court as affecting time to appeal (Comp. St. § 1647).**

Failure of clerk to enter decree in admiralty as of date on which it was signed and delivered to him by District Judge *held* misprision in record, amendable by the court, as affecting time for taking appeal under Act March 3, 1891, § 11 (Comp. St. § 1647).

2. **Judgment ☞191—"Rendition" of judgment means annunciation or declaring of decision, and not entry.**

"Rendition" of judgment means the annunciation or declaring of the decision of the court, and not the entry of the judgment on the record.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Rendition of Judgment.]

3. **Records ☞7—"Filing" means delivery of thing filed into actual custody of proper officer keeping records of court.**

"Filing" means delivery of thing filed into actual custody of proper officer keeping rec-

ords of court, and connotes deposit for permanent preservation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, File.]

**4. Records ☞6—"Entry" is ordinarily synonymous with recording.**

"Entry," or entering, is ordinarily synonymous with recording, and connotes a greater duty than, or additional to, that preservation which is the essence of filing.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Enter—Entry.]

**5. Evidence ☞43(4)—Circuit Court of Appeals takes judicial notice that courts of Second Circuit for a long time have kept a decree book as part of minutes of court.**

Circuit Court of Appeals for the Second Circuit takes judicial notice of the fact that for a very long time the courts of that circuit have kept as a part of the minutes of the court a volume known as the decree book, in which are transcribed at length all final decrees in admiralty.

**6. Admiralty ☞103—Decree in admiralty, signed and delivered to clerk, is "final" as affecting time for appeal, notwithstanding blank is left for costs (Comp. St. § 1647).**

Decree in admiralty, signed by judge and delivered to clerk with intent that it should take usual course in respect to filing and recording, is "final" as affecting time for appeal under Act March 3, 1891, § 11 (Comp. St. § 1647), even though costs are not taxed and blank in decree has been left for them.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final.]

**7. Admiralty ☞103—Decree in admiralty is final, notwithstanding it directs some things to be done in future (Comp. St. § 1647).**

A decree in admiralty is final, as affecting time for taking appeal under Act March 3, 1891, § 11 (Comp. St. § 1647), even though it directs some things to be done in the future.

**8. Admiralty ☞103—Decree in admiralty, signed and delivered to clerk for filing and recording, held final, as affecting time for appeal (Comp. St. § 1647).**

Where judge signed and delivered decree in admiralty to clerk, with intent that it should take usual course in respect of filing and recording, it thereupon became final, as affecting time for appeal under Act March 3, 1891, § 11 (Comp. St. § 1647).

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Demosthenes Helmis and others against the steamship Washington, her engines, etc., in which Bertha Rembaugh, as receiver of Booras Bros., filed a claim. From the decree rendered, the receiver appeals. Appeal dismissed.

See, also, 296 F. 158.

The steamship above named is an American vessel against which some 24 libels were filed, for the most part for wages, supplies, and the like. They were by order duly consolidated; the vessel was sold, and the libels in rem became in effect claims against the proceeds of the sale.

Appellant was the receiver in bankruptcy of Booras Bros., and as such receiver she paid out certain sums of money for some of the expenses of the Washington's last voyage. The exact connection of Booras Bros. with the steamship does not appear in this record, but it is perfectly clear that they were not, and never were, the owners of the Washington.

After the vessel had been seized under the older of the libels now consolidated, appellant, as receiver, did the following things, and did them almost contemporaneously:

(1) She claimed the steamer in the then pending libels on the ground that Booras Bros. was the *owner* thereof:

(2) She filed a libel against the steamer as receiver of Booras Bros. without stating the relation of Booras to the steamer; and

(3) She filed a petition in *this admiralty cause,* requesting payment out of the proceeds of sale of the amounts she had expended, in preference to the maritime liens, for which numerous libels had been filed, although in respect of said advances the receiver herself filed a libel asserting a maritime lien.

The questions raised by these proceedings were in divers ways heard by the court below, and on September 18, 1924, a final decree, entitled in this cause, was signed by the District Judge and delivered to the clerk of the court, with intent that it should take the usual course in respect of filing, recording, etc. This decree in effect refused the receiver any relief under any of the above methods taken to obtain it.

When this decree was signed, the proceeds of the Washington were in the registry of the court. The decree awarded to the clerk certain costs; whether the amount of those costs had been fixed by taxation on September 18th is not clear. For some reason, not explained, the clerk conceived (there is no evidence that the matter was called to the attention of the District Judge) that he should be paid forthwith these costs by the parties, or some of them, instead of obtaining them from the fund in court—the course ultimately taken.

For this reason, or lack of it, the clerk did not write in the book commonly known as the "docket," or "admiralty docket," the fact

that on September 18, 1924, the decree was signed and filed; but he did physically put the decree with the other papers in the case, and in the box, pigeon hole, or envelope devoted to the case of the Washington; and he also caused the decree to be copied in its due chronological order in what is commonly known as the order book, or decree book, of his court. For at least one party interested he permitted a copy of the decree to be made, producing it from what are commonly called the "files," before November 1, 1924.

This condition of affairs came to the knowledge of at least some of the proctors for the original libelants, who insisted upon the clerk's making the usual notation of decree in the "docket." The receiver (who is a member of the bar) knew of the existence of this final decree at least as early as February, 1924. The clerk finally made the entry demanded in the docket, so that it there stands as a statement in effect that the decree was signed and filed on September 18, 1924.

The receiver thereupon made a motion to compel the clerk "to strike from his docket" the statement there appearing, "on and under the date of September 18, 1924, and to enter the said judgment (meaning *decree*) as of and under the date of April 23, 1925," which was the date asserted by the receiver as being the day on which the words "Dated September 18, 1924," were actually written in the docket. This motion was denied, whereupon the receiver took this appeal from said final decree.

Bertha Rembaugh, of New York City, in pro. per.

James W. Ryan and Bigham, Englar & Jones, all of New York City, for libelants Hallin and De Matteis.

George A. Voss, of New York City (Alton W. Teale, of New York City, of counsel), for respondents James Auditore & Co. and another.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The statute (Act March 3, 1891, c. 517, § 11 [Comp. St. § 1647]) requires that appeals from the District to this Court shall be taken "within six months after the *entry* of the * * * decree," and if this decree was *entered* on or before November 22, 1924, the appeal is too late.

That it was signed, and intrusted to the clerk to be treated as law and practice required on September 18, 1924, is not doubted, and it is plain that the clerk did not so treat it. The explanation of his conduct is no excuse. It may be admitted that, under some circumstances, a clerk may have physical possession of a signed decree and yet refuse to enter it, because the fees required by law to be paid him are not discharged. Ommen v. Talcott (D. C.) 180 F. 925. But this decree on its face, and on September 18, 1924, awarded costs to the clerk out of the funds in the registry, whence he could instantly obtain payment. His act in not immediately writing in his docket, under date of September 18, 1924, "Decree signed, Garvin, J.," or words to that effect, is wholly unjustifiable, and constitutes a "misprision in a record," amendable by the court. Groton, etc., Co. v. Clark, etc., Co., 136 F. 27, 68 C. C. A. 577.

It follows that inquiry into the procedural nightmare contained in this record is twofold: First, did the clerk "enter" the decree, notwithstanding his misprision? And (2) can the appellant go behind the record made when misprision amended? Common usage is quite inaccurate in its use of three words, each of which has been at times made a starting point for the time wherein appeal must be taken—the words are "rendition," "filing," and "entry." Since all appeals are by statute, it is vital to note from what act time for appeal is dated, and our word is "entry."

[2] But the meaning of none of these words is defined by statute; it is, as usual, assumed that they are of well-known signification. We think they are. "Rendition" of judgment means the "annunciation or declaring of the decision of the court," and not the "entry of the judgment upon the record." Fleet v. Youngs, 11 Wend. (N. Y.) 522.

[3, 4] "Filing" means the delivery of the thing filed into the actual custody of the proper officer keeping the records of the court. It connotes a deposit for permanent preservation. In re Gubelman (C. C. A.) 10 F.(2d) 926. "Entry," or entering, is ordinarily synonymous with recording. It connotes a duty greater than, or additional to, that preservation which is the essence of filing. Lent v. New York, etc., Co., 130 N. Y. 504, 29 N. E. 988.

"Filing" and "entry" imply, one keeping a document among, and the other extending the document upon, the *records* of the court; and while records were once "memorials or remembrances in rolls of parchment of the proceedings and acts of a court of justice" (O'Connell v. Hotchkiss, 44 Conn. 51, citing cases), they have long come to signify an orderly history of causes and judicial acts written (if the court be of any age) in a long

series of volumes, or in separate documents preserved in an orderly manner.

Evidently, therefore, the books kept by the clerk are important; and they are not statutory. R. S. § 750 (Comp. St. § 1604), states what shall be "entered upon the final record" in equity and admiralty, but does not declare what shape that record shall take. R. S. § 828 (Comp. St. § 1383), requires "all books * * * containing the docket or minute of judgments or decrees" to be open for inspection, but does not instruct as to how the books shall be kept. It evidently presupposes (and section 828 dates from 1853) the decree book, etc., as something well known. The present equity rules do prescribe (rule 3) the books to be kept by the clerk on that side of the court, and one of them is a volume for containing all decrees, etc., passed in term time.

[5] But we take notice of the fact that for a very long time the courts of this circuit have kept, as a part of the minutes of the court, a volume known as the decree book, in which are transcribed at length all final decrees (inter alios) in admiralty, and we find the same practice prevailing in the Court of Vice Admiralty. for the Province of New York, of which most of the minute books after 1715 are on file in the clerk's office of the Southern district of New York.

The clerk's dockets are to be distinguished from the "judgment docket" described in Polleys v. Black River, etc., Co., 113 U. S. 81, 5 S. Ct. 369, 28 L. Ed. 938, and well known probably in every county in the country. The docket or (in some jurisdictions) appearance docket is a day by day notation of the court happenings of a cause; there is no statute requiring it to be kept in any particular way, and the keeping of one evidently grew out of convenience in keeping abreast of increasing business, for before 1834 there are no docket books in the oldest New York district (the Southern); the minute book was enough, which did not assign a page to each case, but told the story of the court and all its cases from day to day. The docket has become an account book only since about 1912, and that for the convenience of the examiners of the Department of Justice, in tracing the charges against the deposit exacted from a litigant on taking out process.

[6] It was against this background that the District Judge made the decree and the clerk acted. We have pointed out that, under the circumstances, the clerk had no right to withhold or delay the decree for any purpose; but even if the costs had not even been taxed, and a blank been left for them, the decree

16 F.(2d)—14

was final, and the time for appeal would begin to run despite the blank. Prescott, etc., Co. v. Atchison, etc., Co., 84 F. 213, 28 C. C. A. 481.

[7] Even if the decree had directed some things to be done in future, it would have been final nevertheless. Radford v. Folsom, 131 U. S. 392, 9 S. Ct. 792, 33 L. Ed. 203. Furthermore the language of the decree as signed on September 18, 1924, never changed, there was no amendment or addition, and the situation shown in Rubber Co. v. Goodyear, 6 Wall. 153, 18 L. Ed. 762, did not and does not exist.

[8] Result is that the decree appealed from was filed (i. e., received and kept by the clerk· as an operative and valid act of the court), and it was entered (i. e., spread upon the records of the court), certainly before November 1, 1924, as we think; but the burden of proving anything to the contrary is on the appellant, and it has not been borne.

If the clerk had noted the filing of decree in the usual way, by stamping the date upon it and noting it in the docket as filed September 18th, the document would have been deemed filed, entered and/or recorded on September 18th, just as (to take a familiar instance) a deed tendered for record is deemed recorded the day, hour, and minute of its reception by the recording officer, though the actual extension in the books of record may not occur for months. We are satisfied that the holding below that the decree was "entered on or about September 18th" was correct; therefore the appeal taken more than nine months later was too late.

We have preferred, somewhat laboriously, to declare the result below, made after examining the facts, to be correct. But, if we pick out of this record what ought to be in it as an admiralty appeal (under our rule 4 in admiralty), we are confronted by the following situation, viz.: The District Court made a decree which, according to the records of that court when the appeal was taken, was filed and entered on September 18, 1924.

By a series of affidavits and motions, not at all interlocutory, because they were all made after September 18, 1924, the situation is shown which we have above considered. A strict adherence to the doctrine of Lurton, J., in Re McCall, 145 F. 898, 76 C. C. A. 430, and First National Bank v. Yerkes, 238 F. 278, 151 C. C. A. 294, would justify us in saying that the order book and docket of the court below, being records of that court, impart absolute verity, and it does not lie in the mouth of an appellant to dispute that verity on appeal; the remedy is by proceed-

ing against those who falsified the record itself.

Decision is put upon the ground first stated, and that disposes of the case. This opinion is written because the questions of practice suggested are not unimportant. The writer of the opinion is the less unwilling to put decision on a procedural point because, after examination of the claims advanced so long ago, he thinks the decision on the merits below correct.

Appeal dismissed, with costs.