GROTON BRIDGE & MFG. CO. v. CLARK PRESSED BRICK CO.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1905.)

No. 2,030.

1. JUDGMENT—ENTRY NUNC PRO TUNC.

Where the clerk of a court of record fails to enter up judgment in full, in fact ordered by the court, at the proper time, the judgment may be amended by the court at a subsequent term, so as to express the order formerly made, either on motion or sua sponte.

2. SAME—NOTICE TO PARTIES—COLLATERAL ATTACK.

Where such nunc pro tunc entry is made at a subsequent term, based on the certain knowledge of the judge of the court, prior notice thereof to the parties is not essential, so as to render the amended judgment amenable to attack in a collateral proceeding.

3. SAME—RES ADJUDICATA.

Where, to an action based on a contract for the sale and delivery of brick, the defendant appears and files answer and a counterclaim in the same plea, alleging a breach of the contract claimed by the defendant to have been entered into by the parties, and then bases on such allegations a counterclaim for damages resulting from the alleged breach by the plaintiff, and, when the case is called for trial, fails to appear, and leaves his plea on record without withdrawing it, thereby imposing upon the plaintiff the production of proof to establish its cause of action, and the court proceeds on the evidence to find the issues for the plaintiff on the pleadings, the judgment therein constitutes an estoppel against a subsequent action brought by the defendant in another jurisdiction based on the same state of facts set up in the counterclaim.

Even if the court rendering such judgment, on the failure of the defendant to appear at the trial, should have treated the counterclaim as withdrawn, its failure to do so would, at the most, have been only an irregularity in proceeding, and did not render the judgment liable to attack as void in a collateral proceeding.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

For opinion below, see 126 Fed. 552.

In May, 1898, the plaintiff in error, hereinafter for convenience called the "Bridge Company," had under construction a bridge over the Ouachita river, at Monroe, in the state of Louisiana; and the defendant in error, hereinafter designated for convenience as the "Brick Company," was then engaged in the manufacture of brick at Malvern, state of Arkansas. A contract at that time was entered into between said parties, whereby the Brick Company was to furnish the Bridge Company brick to be used in said bridge work. On December 7, 1898, the Brick Company brought suit by attachment against the Bridge Company in the state circuit court at Hot Springs, Ark. for the recovery of $438.27 on account of balance due for brick sold and delivered, growing out of said contract. To this action the Bridge Company filed answer on the 16th day of February, 1899, which began as follows: "Comes the defendant, by Rose & Coleman, its attorneys, and for answer and by way of counterclaim says: Defendant admits that it is a corporation duly organized under the laws of the state of New York and engaged in the business of building bridges. It admits that at or about the time mentioned

in the complaint the plaintiff contracted to sell to the defendant a kiln of brick containing about five hundred thousand of brick, more or less, and to ship the same to the defendant at Monroe, La., at the rate of six cars a day." The answer then alleged that the plaintiff was informed at the time that the brick were to be used for building piers in said bridge, and that the contract for construction of the bridge required that plaintiff's brick should be used therein, and that with this knowledge the plaintiff sold to the defendant a particular kiln of brick that was then being burned; that in pursuance of said contract the brick mentioned in the complaint were shipped to the defendant; that the plaintiff refused and failed to carry out its said contract by delivering the brick, although often requested thereto; that the plaintiff was notified by defendant that it could not carry out its building contract without said brick, and that in consequence of plaintiff's failure to keep and perform said contract it sustained great loss and damage, in the manner set forth in the answer; that it had to buy brick from other sources at an advance price of two dollars per thousand over the contract price with the plaintiff; and that in consequence of the delay to obtain the material a rise in the river injured defendant's work in process of construction. It asked judgment against the plaintiff in the sum of $4,600. To this answer the Brick Company, on the 16th day of February, 1899, made reply. It denied that it ever contracted to sell the Bridge Company a kiln of brick, or any particular quantity, but only agreed as to the price to be paid for the quantity delivered. It denied any information that the Bridge Company's contract prohibited it from using any brick other than those of the Brick Company. It denied that it failed or refused to carry out its contract with the defendant, or that the defendant was compelled to stop work by any action or nonaction on the part of the plaintiff, and took issue on other new matter pleaded in the answer. In the second paragraph of the reply it alleged that on December 10, 1898, after the institution of plaintiff's suit against defendant, the defendant brought suit in the Circuit Court of the United States for the Eastern District of Arkansas, in which the Bridge Company set up and relied upon the same identical cause of action set out in its counterclaim in this action, which suit was still pending and undetermined.

At the trial term of said suit in the state court the Bridge Company made application for a continuance until the next term of court; and afterwards, on the 14th day of March, 1899, the cause was continued by consent until the August term, 1899. At said August term, the cause coming on for trial, the record recites that the plaintiff appeared by its attorney, and the defendant is three times called and comes not. "Whereupon the cause is submitted to the court on the complaint of the plaintiff, the affidavit for attachment, the answer of the defendant heretofore filed, and reply of the plaintiff, and written and oral evidence introduced in open court; and the court, being well and sufficiently advised as to what judgment to render herein, finds the issues of law and of fact for the plaintiff, and finds the following facts." The judgment then proceeded to recite that the defendant was indebted to the plaintiff in the sum of $438.27, with interest on $351.27 of said sum from the 10th day of November, 1898, at 6 per cent. per annum, and with interest on $87 of said sum from the 1st day of December, 1898, at 6 per cent. per annum, for which sum judgment was rendered, which was directed to be executed on the attached property. It appears that one Jabez M. Smith had been appointed attorney ad litem for the defendant, and there was taxed in said judgment the sum of $10 as costs for his services. It seems that to the action pending in the United States Circuit Court, referred to in the answer, the Brick Company appeared, and, inter alia, interposed the plea of res adjudicata, based upon said judgment in the state court. That action was afterwards discontinued; and on the 31st day of July, 1901, the present suit was instituted by the Bridge Company against the Brick Company in the said United States Circuit Court in which the Bridge Company sets out substantially the same facts pleaded in its answer and counterclaim in said action in the state court respecting said contract and its breaches by the Brick Company, and prays judgment for the sum of $3,000. To this suit the Brick Company made answer, setting up the sale and delivery of the

brick, which was the basis of its action in the state court, aggregating the sum of $1,479, and, after allowing credits, left due and unpaid a balance in the sum of $438.27, for which it brought suit as aforesaid and recovered judgment in the state court. The answer then set out in detail the appearance and answer of the Bridge Company to said suit in the state court, and the facts pleaded and alleged therein, substantially the same as the facts and matters alleged in the present suit, and pleaded the judgment therein as res adjudicata. The answer then further pleaded substantially the same facts set up in its reply to the action in the state court respecting said contract, claiming that it fully complied with the contract it did make, and that the Bridge Company failed to keep the contract on its part by paying the Brick Company for the brick delivered. The Bridge Company demurred to that portion of the answer which set up the plea of res adjudicata, which demurrer was overruled.

It appears from the transcript of the record and proceedings from the state court in said case of the Brick Company against the Bridge Company that the judgment originally entered therein omitted, in the recitation, the words "and reply of plaintiff" in the paragraph, to wit: "Whereupon this caٰ.e is submitted to the court upon the complaint of plaintiff, the affidavit for attachment, the answer of the defendant heretofore filed, and written and oral evidence introduced in open court." This judgment of the state circuit court, on the 10th day of February, 1900, was amended by an entry nunc pro tunc, which is as follows: "On this day comes the plaintiff and suggests to the court a diminution of the record in this action; and, it being within the knowledge of this court that this case was on the 17th day of August, 1899, submitted to the court upon the complaint of plaintiff, the answer of the defendant, and the reply of the plaintiff, and written and oral evidence, and that the record of the judgment fails to mention the reply as one of the pleadings on which the case was submitted, it is by the court ordered that the record on the trial and judgment of this action made on the 17th day of August, 1899, as appears on page 43, Record B of the records of this court, be amended by interlineation, so as to show that the cause was submitted on the reply of the plaintiff to defendant's answer, among other pleadings, and the amendment is accordingly made." A trial by jury having been waived on written stipulation of the parties, the cause was submitted to the court for trial. The court made a finding of the facts substantially as aforesaid respecting the judgment obtained in the state court, and the nunc pro tunc entry inserting the word "reply" as aforesaid, which the court finds was made without notice to the Bridge Company and without its knowledge. Evidence was introduced to disprove the allegations in the counterclaim. Upon such findings the court decided that the defendant, the Clark Pressed Brick Company, was entitled to judgment sustaining its plea of res adjudicata, and rendered judgment for the defendant, to reverse which judgment the Bridge Company prosecutes this writ of error.

C. T. Coleman, W. E. Hemingway, and G. B. Rose, for plaintiff in error.

W. L. Terry, W. J. Terry, and N. P. Richmond, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

The question to be decided is whether the judgment of the state court in the suit of the Brick Company against the Bridge Company creates an estoppel against the maintenance of the action brought in the United States Circuit Court.

The first contention on behalf of plaintiff in error is that the

nunc pro tunc entry, whereby the word "reply" was inserted in the judgment, should be regarded as a nullity, for the reason that it was made without notice to the defendant therein. The emendation of court records by subsequent entries was expressly authorized by St. 8 Hen. VI, c. 12, which declared that:

"The justices are further empowered to examine and amend what they shall think, in their discretion, to be misprisions of their clerks, in any record, process, word, pleading, power of attorney, writ, panel or return." Tidd's Prac. (Am. Ed.) § 712.

This statute is a part of the common law of the state of Arkansas. It does, however, but give sanction to the inherent power which, from its very constitution and responsibility, must reside in every court of high jurisdiction, to enable it to see to it that its records speak the truth, as a false record is an offense to the law. A judgment is what the court pronounces. The entry made by the clerk may be evidence of what the pronouncement of the court was; but, as it is but the act of the scrivener of the court, his failure to properly and exactly put down what the court in fact ordered is a mere misprision of the clerk, which the court at any time can, and should, rectify by having the order or judgment the court in fact directed entered nunc pro tunc. This is succinctly expressed in St. 8 Hen. VI, supra, empowering the judges "to examine and amend what they shall think, in their discretion, to be misprisions of their clerks."

In re Wight, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. Ed. 865, the petitioner had been indicted in the United States District Court for the Southern District of Michigan. After conviction he filed a motion for new trial and in arrest of judgment, the hearing of which the District Court certified and remitted to the next Circuit Court of the district. On hearing before Circuit Judge Jackson, and Brown, District Judge, the motions were denied; and on the same day the judge of the District Court proceeded to judgment of sentence against Wight, who thereupon applied for his discharge on writ of habeas corpus, to Mr. Justice Harlan, the justice assigned at that time to the Sixth Circuit. The basis of this application was that the record failed to show that on the overruling of said motions by the Circuit Court there was an order remitting the case back to the District Court. Confessedly, after the transfer of the case to the Circuit Court, unless the District Court regained jurisdiction of the case by proper order of the Circuit Court remitting the case to the District Court, the latter had no jurisdiction to sentence the petitioner. This fact being called to the attention of the judges of the Circuit Court, they caused an order to be made, nunc pro tunc, based "upon the inspection of said records," remanding the cause to the District Court; and thereupon the writ of habeas corpus was discharged. In reviewing this action of the Circuit Court Mr. Justice Miller went quite fully into the question, and approved that line of decisions which holds that the power is inherent in courts of record, by entry nunc pro tunc at a term subsequent to that at which the judgment was rendered, to make the record show fully the order or judgment the

court in fact made at the proper term, but which the record failed to disclose.

In no jurisdiction is this practice more fully recognized than by the courts of Arkansas. In Bobo v. State, 40 Ark. 231–232, Chief Justice English presented a summary of the decisions of that court touching this practice, the sum of which is that:

"Courts have a continuing power over their records, not affected by the lapse of time. Should the record in any case be lost or destroyed, the court whose record it was possesses the undoubted power, at any time afterwards, to make a new record. In doing this it must seek information by the aid of such evidence as may be within its reach tending to show the nature and existence of that which it is asked to re-establish. There is no reason why the same rule should not apply, when, instead of being lost, the record was never made up, or was so made up as to express a different judgment than the one pronounced by the court. Hence the general rule that a record may be amended, not only by the judge's notes, but also by other satisfactory evidence"—Citing Frink v. Frink, 43 N. H. 514, 80 Am. Dec. 189, 82 Am. Dec. 172.

He also cited with approbation what Fletcher, J., said in Balch v. Shaw, 7 Cush. 284, as follows:

"There can be no doubt that it is competent for a court of record, under its general, inherent, and necessary authority, to correct the mistakes and supply the defects of its clerk or recording officer, so as to have the record conform to the actual facts and truth of the case; and this may be done at any time, as well after as during the term, nunc pro tunc. * * * This was not a case of want of jurisdiction, in which the record cannot be amended, because, there being an omission to act, there is nothing to record. In such case the defect is not in the record, but in the action of the court."

The answer to all this, made by the learned counsel for plaintiff in error, is that there was no notice given of the motion for the nunc pro tunc entry. In Balch v. Shaw, supra, in discussing this question, the court said:

"The court of common pleas, having the exclusive right and jurisdiction in the matter, were the proper judges of the necessity and propriety of extending the record, and of the proofs and of the sufficiency of the proofs upon which to proceed. Such a record, when made up, is conclusive, until altered or set aside by the same or some other court having jurisdiction; but it cannot be drawn in question collaterally when such record is used or relied upon in support of a title. It was further said that the extended record was invalid, because made without notice. But this was not a case for notice. Surely a court of record need not give notice to all the world to come in and show cause why it should not make its record conform to the truth of the case. Any party, who supposes he can show such cause, should apply to the court to have the record set aside or expunged, after it is made. * * * The court might amend their records upon their own motion, or upon the motion or suggestion of any one interested. It is not a proceeding in which there need be any parties. It is the act of the court itself, correcting its own records, to make them conform to the truth of the case."

In Lewis v. Ross, 37 Me. 230, 59 Am. Dec. 49, the court said:

"On general principles it is competent for a court of record, and incident to its authority, to correct mistakes in its records which do not arise from the judicial action of the court, but from the mistakes of its recording officer. In doing this it may regulate its own actions upon its own sense of responsibility and duty, and proceed, upon suggestion or motion of those interested, or upon its own 'certain knowledge and mere motion.' * * * It would not be an adversary proceeding, in which, of necessity, there should be parties, or in which notice would be required."

In Odell v. Reynolds et al., 70 Fed. 656, 17 C. C. A. 317, the court, in discussing the practice of such entries nunc pro tunc, said:

"Sometimes the propriety of such action exists in cases where the correction may be made upon that which appears in the record itself, and is necessary to make it consistent and harmonious, one part with another. In other cases it is necessary, in the interests of justice, to act upon matters not appearing from the record; for example, things resting in the recollection of the judge, or evidence adduced aliunde. In the former case notice to the parties is not necessary. No new thing is brought upon the record. * * * There is nothing to litigate. No right is substantially affected. * * * If it is the recollection of the court, it is doubtful whether notice is required, for the reason that it is not open to contest. At all events, it would seem, upon the authorities, that corrections of the record made by the court upon its own recollection would not be collaterally assailable, though made without notice."

The order of the court amending the record in the case here under review shows that it was based upon the knowledge of the court of the facts. It was, therefore, a matter appealing to the conscience of the judge to have the record of his court contain the truth, the whole truth, and nothing but the truth. The requirement of notice to a party implies the right to appear and contest. A challenge to the court on an entry directed to be made, based upon its own knowledge, would present an unseemly contention before the presiding judge. How could such an issue be tried? The presiding judge says, "Within my own knowledge the case was tried on the petition, answer, and reply." Would the defendant, in the face of the court's statement, be heard to say, "I deny it"? If the court is to try it out, is the judge to yield his own knowledge, his inward consciousness, to what some witness may say? The inevitable presumption that the court would follow its own knowledge and conscience is, in itself, a contradiction of such practice. At no time during this controversy has the plaintiff in error challenged the truth of the fact recited in the nunc pro tunc entry.

The next contention on behalf of the plaintiff in error is that when it, in the state court, failed to appear and prosecute its counterclaim, it was tantamount to a nonsuit, or withdrawal of the counterclaim, and the court should have so treated it. Therefore there should have been no trial of the issues raised by the answer and reply, and no judgment thereon. If this were conceded, would it follow that the action of the court in proceeding to trial and judgment on the whole issues presented by the pleadings rendered the judgment subject to collateral attack? The defendant therein having appeared and filed answer, it remained in court for all purposes connected with the litigation until such answer was withdrawn, which was never done. The court being one of general jurisdiction over the parties and the subject-matter, it had the power to adjudicate. At the utmost, therefore, its action in not treating the failure of the defendant to urge its counterclaim as a constructive abandonment thereof was only an irregularity in a matter of procedure, a voidable error, and not a judgment coram non judice.

In Shaver & Son v. Shell, 24 Ark. 122–123, the justice of the peace, where the suit was on an open account and the plaintiff failed to appear, instead of entering a nonsuit against the plaintiff, as con-

templated by the practice act, rendered judgment by default against the defendant. Of a collateral attack made on this judgment, English, C. J., said:

"The justice should have nonsuited the plaintiffs; and it was an error for him to render judgment by default against the defendant, which she could have corrected by appeal; but, failing to appeal, the judgment became final. The justice having jurisdiction of the subject-matter of the suit, by service of the process, which affirmatively appears, the judgment could not be regarded as null and void, when presented to the circuit court collaterally, on account of the error of the justice in rendering it without evidence"—citing Hill v. Steel, 17 Ark. 440; Alston, Ex parte, Id. 580.

Such a proceeding was merely erroneous, correctable by writ of error. Patting v. Spring Valley Coal Co., 98 Fed. 811, 39 C. C. A. 308. It is not subject to collateral attack. Dowell v. Applegate, 152 U. S. 339, 340, 14 Sup. Ct. 611, 38 L. Ed. 463. Freeman on Judgments, p. 252, § 135, says:

"Jurisdiction being obtained over the person and the subject-matter, no error or irregularity in its exercise can make a judgment void."

The defendant having left its answer on file, the plaintiff therein could not have moved to strike it from the files, nor could the court disregard it; and this for the palpable reason that the answer contained something more than a counterclaim. It opens with the statement: "Comes the defendant, and for answer and by way of counterclaim says." It then proceeds to state that the plaintiff contracted to sell to the defendant a kiln, containing about 500,000 brick, more or less, and to ship the same to Monroe, La., at the rate of six cars a day; that it had information of the use to which the defendant was to put the brick, and that the plaintiff, therefore, agreed to furnish the defendant a particular kind of brick; that the brick sued for by plaintiff were shipped "in pursuance of said contract; * * * that it afterwards failed and refused to carry out its said contract by delivering the brick, although the delivery thereof was continually demanded, but sold said brick to other parties, and utterly failed and refused to carry out its contract."

So, while it is true that on the plaintiff's alleged breaches of the contract the defendant laid the predicate of its counterclaim, the facts alleged stated a complete defense to the plaintiff's right of recovery. As the account sued on was for brick delivered under the contract, the contract being an entirety, if the plaintiff itself, as alleged in the answer, broke the contract, it was not entitled to recover thereon, on the ground that he who commits the first substantial breach of a contract cannot maintain action against the other party for a subsequent default in the performance thereof. Cattle Company v Martindale, 63 Fed. 84–89, 11 C. C. A. 33–38; Guarantee Co. v. Mechanics', etc., Co., 183 U. S. 402, 22 Sup. Ct. 124, 46 L. Ed. 253; Imperial Fire Insurance Company v. Coos Co., 151 U. S. 463–467, 14 Sup. Ct. 379, 38 L. Ed. 231; Hubbard v. Association, 100 Fed. 719, 40 C. C. A. 665; National Surety Company v. Long, 125 Fed. 887, 60 C. C. A. 623. If the Bridge Company preferred to try its counterclaim in the federal court, the proper course, and the only course open to it, was to withdraw its answer in the

state court, relieving the plaintiff of the burden of introducing any evidence to support its action. As said in Eastmure v. Laws, 7 Dowling, 435, 436, by Bosanquet, J.:

"I have always understood that when issue is joined between two parties in a cause, on a second action on the same matter, the verdict, judgment, and issue in the first suit may be pleaded by way of estoppel, and are conclusive. * * * That is the case here, and there is averment that the sum which was the subject of set-off in the first action is the same which is now in controversy."

After stating that the defendant was not bound to plead the set-off, he added:

"It is for the defendant, therefore, to say whether he will defend the action without pleading the set-off, and, if he pleads, he must suffer the consequences of leaving it on record. Here he has abandoned the opportunity of taking the plea off the record, on payment of all costs, which he might have obtained on going to the judge at chambers, up to the very last moment before the trial was called on. But he puts the plaintiff to the trouble of coming down to contest the plea set up."

By leaving its answer on file in the case, judgment by default against the defendant could not go. It placed the plaintiff under the necessity of going to trial on the issues, and adducing proof to show what the contract was and that it had not violated it. That particular fact, therefore, was included in the matter adjudged. The very foundation of the suit in the federal court is that the Brick Company did not observe and keep its contract, but broke the same, to the damage of the Bridge Company in the sum of $3,000. As under the Code of Arkansas no reply is required, except as to counterclaims and the like set up in the answer, the judgment pleaded as an estoppel, with or without the amendment made by the state court, concluded the controversy as to who had broken or kept the contract, because it was directly involved in the issues made by the defendant's answer. Durham v. Bower, 77 N. Y. 80, 33 Am. Rep. 570; Patrick v. Schaffer, 94 N. Y. 423–507; Cromwell v. Sac County, 94 U. S. 353, 24 L. Ed. 195; Southern Minn. Ry. Co. v. St. Paul, etc., Ry. Co., 55 Fed. 695, 696, 5 C. C. A. 249.

It results that the judgment of the Circuit Court must be affirmed.