INTERNATIONAL HARVESTER CO. OF AMERICA v. CARLSON.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1914.)

No. 4049.

1. BANKRUPTCY (§ 415*) — APPLICATION FOR DISCHARGE — HEARING — LOST RECORD—POWER TO SUPPLY.

Where an order of the bankruptcy court extending the time within which a bankrupt might file exceptions to the report of a special master on objections to the bankrupt's discharge had never been entered of record, and had been lost or destroyed, the court had power to supply the record at a subsequent term.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 698–708, 719, 723, 724, 726, 728; Dec. Dig. § 415.*]

2. BANKRUPTCY (§ 415*)—APPLICATION FOR DISCHARGE—REFERENCE.

While applications for a discharge may be referred to the referee in bankruptcy to ascertain and report the facts, such reference is not by consent, and the report of the referee is advisory only; it being the court's duty to pass on the issue whether exceptions are filed to the report of the referee or not.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 698–708, 719, 723, 724, 726, 728; Dec. Dig. § 415.*]

3. BANKRUPTCY (§ 415*)—DISCHARGE—REFERENCE—HEARING.

Under Bankr. Act July 1, 1898, c. 541, § 14, subd. "b," 30 Stat. 550, as amended by Act June 25, 1910, c. 412, § 6, 36 Stat. 839 (Comp. St. 1913, § 9598), imposing the duty of passing on a bankrupt's petition for discharge solely on the district judge, the fact that the judge has sent specifications of objection to a referee for hearing does not absolve him from the duty of passing on the issues raised and exercising an independent judgment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 698–708, 719, 723, 724, 726, 728; Dec. Dig. § 415.*]

4. BANKRUPTCY (§ 22*)—PROCEDURE—EQUITY RULES.

General equity rules may be looked to for analogies in the performance of the administrative work of courts of bankruptcy, but cannot be applied in such courts as rules of court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. § 22.*]

5. BANKRUPTCY (§ 407*) — DISCHARGE — OPPOSITION — GROUNDS — "MATERIAL STATEMENT."

The term "material statement," as used in Bankr. Act 1898, § 14, as amended, providing for refusal of a discharge in case the bankrupt has obtained money or property on credit, on a materially false statement in writing made to obtain credit, means not a blank nor an inference from a blank, but a direct statement, either positive or negative, which is false; and hence a discharge could not be successfully opposed on that ground, because a schedule of liabilities in a financial statement made by the bankrupt in order to obtain credit was left entirely blank.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

6. BANKRUPTCY (§ 407*) — DISCHARGE — OPPOSITION — FALSE STATEMENT — "FALSE."

After a bankrupt, who was a farmer, had purchased a farm machinery business, an objecting creditor made an agency contract with him, and in connection with the negotiations obtained from him a financial statement. The bankrupt testified that he made a full disclosure to the agent, and that he depended on him to enter the facts on the statement according

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to such disclosure, and signed the statement without reading it. *Held* that, though the statement was inaccurate, it was not "false," so as to bar the bankrupt's discharge, under the rule that a statement, to be available for this purpose, must be knowingly and intentionally untrue.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*

For other definitions, see Words and Phrases, First and Second Series, False.]

Appeal from the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

In the matter of bankruptcy proceedings of George Carlson. From an order overruling objections to the bankrupt's discharge, filed by the International Harvester Company of America, it appeals. Affirmed.

George Wambach, of Des Moines, Iowa, for appellant.
Frank Wisdom, of Bedford, Iowa, for appellee.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This is an appeal from an order granting a discharge in bankruptcy. The facts are briefly these:

The bankrupt, George Carlson, had been a farmer all his life prior to the year 1909. In the fall of that year he bought out the farm machinery business of a man by the name of Ledgerwood, of Blockton, Iowa. Ledgerwood had been a local agent of the International Harvester Company. A few days after the sale a general field agent of that company applied to Carlson to continue the agency, and entered into a contract with him to supply him certain farm implements. In connection with these negotiations the agent asked Carlson for a financial statement. This statement was made on a form of the company. Carlson himself knew nothing about commercial business. He answered questions put to him by the agent, and the agent filled out the statement. The agent testified that when it was finished he turned it round to Carlson and said: "There it is just as you gave it to me. He looked at it a moment or two, and then signed it." Carlson testified that he did not read the statement, but that he told the agent fully his financial condition, the amount of his property, and the debts he owed. Carlson afterwards became a voluntary bankrupt, and the International Harvester Company filed objections to his discharge, based upon the above statement, alleging that it contained materially false statements.

The petition for discharge and specification of objections were referred to the referee to take the evidence and make findings of fact and recommendations to the court. Testimony was taken by the referee, and he made his report in writing on the 11th day of March, 1913, recommending that the petition for discharge be denied. On the 17th of April, more than 20 days after the filing of the report, the bankrupt filed his exceptions thereto. On the 2d day of May, 1913, the objecting creditor filed a motion to strike the exceptions upon the ground that the same were not filed within the time required by equity rule 66. This motion and the matter of the bankrupt's discharge were brought on for hearing before the court on the 22d day of August, 1913. The court

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, ~ Rep'r Indexes
217 F.—47

made an order on that day denying the motion and sustaining the exceptions, and reciting in the body of the order that "the court had extended the time to said bankrupt in which to file his exceptions." The order also granted the bankrupt his discharge. At the time this order was made there was nothing of record showing that the time for filing exceptions to the referee's report had been extended. The present appeal was perfected on the 26th of August, 1913. November 5, 1913, the court, on motion of bankrupt's attorney, and without notice to the objecting creditor, made a nunc pro tunc order reciting that the same was based on personal knowledge of the judge, as follows:

"It is hereby ordered this day, as of date March 22, A. D. 1913, that said George Carlson have until April 16, A. D. 1913, within which time to make and file his exceptions to the report of H. H. Whitaker, special master, upon the application of said bankrupt for his discharge for the reason that such order was in fact made on the 22d day of March, 1913, in writing, but not reduced to record. This order is now granted for the purpose of showing the true facts of the case."

By a supplementary record this order and the facts relevant thereto were brought before this court.

This order was made at a term subsequent to the term at which the order which it purports to supply was entered.

[1] It is first objected that the trial court had no power to make the order of November 5, 1913. In the motion it was pointed out that the original order had never been entered of record and had been lost or mislaid. We think the court had power to supply this record at a subsequent term. Its authority to do so is supported by decisions of the Supreme Court and of this court. In re Wight, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. Ed. 865; Groton Bridge & Mfg. Co. v. Clark Press Brick Co., 136 Fed. 27, 68 C. C. A. 577; In re Welty (D. C.) 123 Fed. 122.

[2-4] We do not consider the making of this order as at all important, however. The bankruptcy law (section 14, subdivision "b") imposes the duty of passing upon a bankrupt's petition for discharge solely upon the district judge. Subdivision 3 of rule 12 of the Supreme Court to carry the bankruptcy act into effect emphasizes this duty. Referees in bankruptcy have no power to hear such petitions. Such an application may be referred to the referee "to ascertain and report the facts." Such a reference, however, is not by consent, and the report of the referee can be treated as advisory only. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 277, 32 L. Ed. 695; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; In re Holden, 203 Fed. 229, 121 C. C. A. 435; In re Swift (D. C.) 118 Fed. 348. The duty of the court to pass upon the issue cannot be shifted by such a reference, nor can the duty of the court be dependent upon the filing of exceptions. Orderly practice would require that such exceptions be filed, but the omission to do so is not jurisdictional. When the question of the discharge is brought before the District Court the issue is made up of the specifications of objection to the discharge, and the bankrupt's answer thereto, and not by the report of the referee and exceptions thereto. We are of the opinion, therefore, that it was the duty of the District Judge to hear the cause and exercise an independent judgment thereon. When the referee's report was brought to his notice, he was then,

for the first time, called upon to perform his duty of deciding whether the petition for discharge should be granted or denied. If the filing of exceptions to the master's report would aid him in the performance of this duty, he had ample authority to require such exceptions to be filed, or to consider such exceptions though they were filed late. Counsel for the objecting creditor insists that rule 37 of the bankruptcy rules makes the general equity rules prescribed by the Supreme Court applicable to proceedings in bankruptcy, and that by equity rule 66 (198 Fed. xxxvii, 115 C. C. A. xxxvii) the time for filing exceptions to the report of masters is fixed at 20 days. We do not think that the general equity rules can be applied as rules of court in the performance of the administrative work of courts of bankruptcy. They may be looked to for analogies, but not as rules. The Supreme Court itself has fixed the rules to govern courts of bankruptcy. To hold that the District Court was bound by the report of the referee, because exceptions were not filed within 20 days, would deprive that court of its duty both under the bankruptcy law and the rules of the Supreme Court to pass upon the question of the bankrupt's right to his discharge.

[5] Coming to the merits of the case, we are clearly of the opinion that the decision of the District Court granting the bankrupt his discharge was right. The evidence fails to show that bankrupt made "a false statement in writing." His financial statement under the head of "Assets" states that his stock of goods is worth $1,000, and that he had cattle, hogs, horses, and implements on the farm of the value of $2,500. Under the heading of "business liability" there are numerous subheads such as, "Owing for Merchandise, Notes or Accounts Past Due," "Owing to Banks," "Borrowed Money Other than Bank," "Taxes, Rent, or Other Bills Payable," etc. Opposite these various items is a column for the insertion of the proper amount. This schedule of liabilities is left entirely blank in the statement, and it seems to be contended that because of these blanks the bankrupt states that he owed nothing that could properly come under either of these heads; whereas, in fact, the evidence shows that he was indebted in considerable sums under each head. We do not think that an omission constitutes a "material statement," within the meaning of section 14 of the Bankruptcy Act. There is nothing in any other part of the form which declares that blanks unfilled are to be construed as representing that nothing is owing under the heading. A "material statement" means not a blank, nor an inference from a blank. There must be a direct statement, either negative or positive, which is false, to justify the denial of the bankrupt's discharge.

[6] Again, even adopting the theory of appellant, the statement was not "false." The bankrupt testifies that he made a full disclosure to the objecting creditor's agent, and depended upon that agent to enter the facts according to such disclosure. The bankrupt signed the statement without reading it, and probably without being able to understand its provisions. To be a ground for denying the discharge the written statement must be knowingly and intentionally untrue. Gilpin v. Merchants' National Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023. We do not mean by this that a person who makes a statement in writing for the purpose of obtaining credit shall not be held

responsible for such statement. In such a case negligence easily passes over into fraud. The maker of the statement is bound to know that it will be relied upon and bound to exercise an honest judgment to state his business condition truthfully. But if he is misled into signing an untrue statement by the creditor's own agent, in whom he had a right to rely, the statement is not "false" within the meaning of the statute. Furthermore, to allow the creditor to use such a statement to defeat a bankrupt's discharge would permit it to take advantage of its own wrong.

The decree of the trial court is affirmed.