## In re SMITH.

(District Court, N. D. New York. April 24, 1916.)

1. BANKRUPTCY ⬩⟿407(5)—GROUNDS FOR DISCHARGE—FALSE STATEMENT.

A statement made by the bankrupt on a printed blank, which stated at the beginning that it was a true and complete statement of his resources and liabilities, followed by two columns of·items for each, some of which were filled in by the bankrupt and some left blank, at the bottom of which columns was a space for the total resources and total liabilities, which were filled in by the bankrupt, with the totals of the items listed above, was a statement in writing that it represented all his liabilities, and where the value of the assets as therein stated was exaggerated, and a number of large items of liabilities omitted, so that it showed his assets as nine times his liabilities, when in fact they were about the same, the statement was materially false, within Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550, as amended by Act June 25, 1910, c. 412, § 6, 36 Stat. 839 (Comp. St. 1913, § 9598), providing that a bankrupt shall be discharged unless he has obtained money or property on credit on a materially false statement in writing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 760, 761; Dec. Dig. ⬩⟿407(5).]

2. BANKRUPTCY ⬩⟿407(5)—GROUNDS FOR DISCHARGE—FALSE STATEMENT—"MATERIALLY FALSE."

To authorize denial of discharge of a bankrupt, a statement must be "materially false," which means more than simply erroneous or untrue, and imports an intention to deceive; but where it appears that the bankrupt knowingly and intentionally omitted to disclose the greater part of his indebtedness, the necessary consequence of which was to deceive his creditors, the intention to deceive may be inferred.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 760, 761; Dec. Dig. ⬩⟿407(5).

For other definitions, see Words and Phrases, Second Series, Materially False Statement.]

3. BANKRUPTCY ⬩⟿407(5)—DENIAL OF DISCHARGE—GROUNDS—FALSE STATEMENT—DEPOSIT IN BANK.

Where a bankrupt gave a statement in writing of his assets and liabilities, which showed the amount of money he had in the bank correctly as it appeared on the books of the bank, but he knew that he had drawn and delivered checks thereon which had not been cashed, and which would practically exhaust his account, his statement was false.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 760, 761; Dec. Dig. ⬩⟿407(5).]

4. BANKRUPTCY ⬩⟿408(3)—DENIAL OF DISCHARGE—GROUNDS—CONCEALMENT OF PROPERTY.

Where a bankrupt, at the time he filed his voluntary petition, had a small deposit in the bank, which he did not list in his schedule of assets, and did not turn over to the trustee, but later drew out for his own use, he concealed property from his trustee, for which he can be denied a discharge, since the amount of the property concealed is not material.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 735, 736; Dec. Dig. ⬩⟿408(3).]

---

In Bankruptcy. In the matter of Benton D. Smith, bankrupt. On report of the special master against the discharge of the bankrupt. Report approved, and discharge denied.

This is a hearing on the application of the bankrupt to set aside the report of the special master, who reports against the discharge of the bankrupt, on the one hand, and an application by the trustee in bankruptcy and a creditor to confirm and approve such report, and, pursuant to the report of the special master, refuse a discharge.

Wm. D. Tuttle, of Cortland, N. Y., for bankrupt.

Costello, Burden, Cooney & Walters, of Syracuse, N. Y. (David F. Costello, of Syracuse, N. Y., of counsel), for trustee and creditors.

RAY, District Judge. Specification of objection to the discharge of the bankrupt No. IV reads as follows:

"IV. That such application should not be granted because of the following facts, constituting an additional ground which the undersigned charged to be true, namely:

"A. That said bankrupt obtained property consisting of meats and provisions on credit from objecting creditor, Morris & Co., upon a materially false statement in writing made by him to said Morris & Co. for the purpose of obtaining credit from Morris & Co. That said statement in writing was dated August 18, 1914, and executed and signed on that date by said bankrupt, and delivered to Morris & Co. on that date, and in and by such statement said bankrupt falsely and fraudulently for the purpose of obtaining credit from Morris & Co. represented to said Morris & Co. that his merchandise on hand cost five hundred dollars ($500), that he owned accounts all good, amounting to eight hundred dollars ($800), that he had cash on hand in the First National Bank of Tully, N. Y., to the amount of one hundred fifty dollars ($150), that he owned real estate of the value of six hundred dollars ($600), that he owed no other debts, aside from four hundred and sixty-one dollars ($461) to Morris & Co., and that he had no liabilities except the debt owed to Morris & Co., amounting to four hundred and sixty-one dollars ($461), and in that said bankrupt represented therein that the firm conducting said meat market was composed of D. B. Smith's estate and Benton D. Smith.

"That said statement was false and known by the bankrupt at the time of the making thereof to be false, in that the merchandise which bankrupt had on hand at that time did not cost to exceed three hundred dollars ($300), in that his outstanding accounts did not amount to eight hundred dollars ($800), in that said bankrupt did not have cash on deposit in the First National Bank of Tully amounting to one hundred and fifty dollars ($150), in that said bankrupt did not own real estate in which his equity was worth the sum of six hundred dollars ($600), and in that said bankrupt had other liabilities and owed other debts than those to Morris & Co., to wit, Armour & Co., the estate of D. B. Smith, and others, and in that the firm conducting said market was not composed of D. B. Smith's estate and Benton D. Smith.

"That said written statement and the representations therein made were made by said bankrupt to objecting creditor, Morris & Co., for the purpose of obtaining credit from Morris & Co., and that Morris & Co. relied upon said statement and the representations therein made, and sold and delivered to said bankrupt thereafter merchandise consisting of meats and provisions of the value of one thousand dollars and upwards, upon which account there remains unpaid the sum of five hundred and four dollars ($504)."

On or about the 18th day of August, 1914, the now bankrupt filled out, signed, and delivered to the objecting creditor, Morris & Co., a written statement as to his resources and liabilities, of which the following is a copy:

"Aug. 18, 1914.

"Messrs. Morris & Company, Syracuse, N. Y.—Gentlemen: For the purpose of obtaining credit with you for merchandise which I (we) may now or hereafter purchase of you, and for the purpose of securing an extension of time for the payment of purchases heretofore made, I (we) make the following true and complete statement of my (our) resources and liabilities:

| Resources. | Dollars. | Cents. |
|---|---|---|
| Mdse. on hand, cost .................................... | 500 | |
| Store fixtures ........................................ | 1875 | |
| 1 horse, present value ...............................'.................... | | |
| 2 wagons, present value................................. | 125 | 00 |
| Notes, all good....................................... | | |
| Accounts, all good.................................... | 800 | 00 |
| Cash on hand........................................ | 140 | 00 |
| Cash in First National Bank, Tully, N. Y................ | 150 | 00 |
| Other personal property............................... | | |
| Real estate, title in name of D. B. Smith................ | | |
| Situated Tully St., Onondaga St., Market value.......... | 600 | 00 |
| Homestead title in name of............................ | | |
| Situated, market value................................ | | |
| Total resources ................................. | 4190 | 00 |

| Liabilities. | Dollars. | Cents. |
|---|---|---|
| Mdse., not due, owing to Morris & Co., Syracuse, N. Y.... | 227 | 00 |
| Mdse., past due, owing to Morris & Co., Syracuse, N. Y.... | 234 | 00 |
| Owe on notes ........................................ | | |
| Chattel mortgage .................................... | | |
| Owe to banks ....................................... | | |
| Owe on judgments ................................... | | |
| Owe for wages ...................................... | | |
| Confidential indebtedness to relatives and others......... | | |
| Mortgage on homestead .............................. | | |
| Mortgage on other real estate ........................ | | |
| All other debts ..................................... | | |
| Total liabilities ................................. | 461 | 00 |

"I (we) conduct a Meat Market

"I (we) keep the following books of account in my (our) business: Cash book; McCaskey System of bills.

"The firm is composed of D. B. Smith's estate and Benton D. Smith

"I am (we are) at present located at Tully, N. Y.

"My (our) stock and fixtures are insured for $1,000.00 in Niagara Insurance Company; other property is insured for $1,200.00 in Niagara Insurance Company.

"The above statement, printed and written, is true and correct in every particular, and you may rely upon it as a continuing basis for both present and future credit dealings with me (us), unless and until I (we) hereafter from time to time advise you in writing of any change therein at the time such changes occur.

"Yours truly,	Benton D. Smith.
"Composing the Firm of D. B. Smith & Son.
"Witnessed by: T. J. Carey."

The proof shows, and the special master finds, that this statement was made for the purpose of obtaining credit and property on credit, and that both credit and property were obtained thereby. The special master also finds that the now bankrupt "knew the contents of the paper, and that as filled out it showed an incomplete and false statement of his financial condition." The special master also finds, and the evidence sustains the finding, that in his opinion the statement "was a materially and willfully false statement in writing."

[1] The bankrupt filed his petition in voluntary bankruptcy with schedules attached on the 7th day of November, 1914, less than three months thereafter. In such schedules he states that his liabilities had a note due the First National Bank of Tully, N. Y., for $500 given for money for his own personal use. This note was secured by a chattel mortgage upon the fixtures in his meat market. He gave his unsecured indebtedness as $904.19, making an aggregate of $1,404.19. In such schedules he reported his personal property as consisting of stock in his market, $300, fixtures and tools in the market, $1,500, bills or accounts receivable, as $300, and his exempt property consisting of wearing apparel, tools, and implements and household furniture as $335. In short, excluding property he claimed to be exempt, he reported his assets to be of the value of $2,100 and his liabilities as $1,404.19. If the machinery, tools, etc., were worth $1,500, and the mortgage for $500 thereon was good, this would reduce his liabilities by $500 and leave his assets unincumbered at $1,600 at the time the petition was filed. In any event, between August 18, 1914, when the bankrupt obtained the property of Morris & Co. upon the written statement aforesaid, and the date of the filing of the petition November 7, 1914, there was a large falling off in assets and a large increase in liabilities.

The evidence shows, and the special master finds, that at the time the bankrupt made the written statement upon which he obtained credit he was owing other parties as follows: Armour & Co., $144.35; the Cortland Beef Company, about $100; the Bank of Cincinnatus, $129; one A. T. Smith, $57.34; the estate of D. B. Smith, $2,000; and to his wife, $375—or in all, $2,805.69, unsecured indebtedness. In addition to this he owed a mortgage on his real estate of $1,200. As to this failure of the bankrupt to include in the statement referred to the liabilities referred to the special master says:

"The bankrupt's testimony in an attempted explanation of his omission of the unstated liabilities is unsatisfactory. It discloses great carelessness, amounting to recklessness, and is sometimes contradictory. The representatives of Morris & Co., of Armour, and other adverse witnesses upon the whole commended themselves to me as being reliable and careful concerning their testimony."

The special master finds that the only real estate the bankrupt ever owned was the parcel mentioned in the financial statement and therein valued at $600, and also finds and reports that it was incumbered by a mortgage of $1,200. The real estate had been recently purchased for $1,525. If the bankrupt in his statement intended to give the value of his equity in the real estate, as he probably did, he had no warrant for placing it above $325. In August or September the bankrupt conveyed

this real estate to his wife in payment of his indebtedness to her, which indebtedness was not included in the financial statement.

The attorney for the bankrupt contends, among other things, that the misrepresentations in the financial statement referred to consist of omissions, rather than assertions; that is, that there are blanks not filled out, and that these omissions cannot be the basis of a finding that the bankrupt willfully and intentionally made a false statement as to his assets and liabilities. But suppose the bankrupt had made no mention, opposite the blanks for stating his liabilities, of the amount of his liabilities—that is, had inserted no figures whatever, and his liabilities in fact had been $2,000, or $4,000—would not this have been a materially false statement in writing? Would it not have been a representation that he was not owing anything? He must have known, and he did know, as the special master finds, substantially what his liabilities were, and he deliberately omitted the amount; that is, he did not insert the amount of certain indebtedness opposite the words printed in such statement for the purpose of having such indebtedness, if any, appear. Here by omissions in the statement in writing he willfully and intentionally concealed the greater portion of his indebtedness by failing to state the truth when called upon to do so. In effect he represented that the other indebtedness mentioned did not exist, when he knew it did exist. In the statement at the foot of the column showing resources the statement says, "Total resources, $4,190.00." And at the foot of the column headed liabilities we find, "Total liabilities, $461.-00." What is this but a statement in writing that his total resources are $4,190, and that his total liabilities are $461?

The statement was knowingly made, intelligently made, purposely made, for the purpose of obtaining credit, and was materially false, for the reason that it concealed from the creditors extending the credit indebtedness amounting to $2,805.69, or about seven times as much as the liabilities disclosed in the statement. It is inconceivable that this bankrupt, in filling out this statement for the purpose of obtaining credit, inadvertently omitted to include a statement of his indebtedness which was omitted. If a few items of small amount had been omitted, we might say with reason that the omission was accidental; that is, that the existence of the indebtedness was not present in the mind of the bankrupt at the time he made the statement. But when we come to a statement in writing wherein the bankrupt deliberately foots up and writes in his "total liabilities" as "$461.00," when in fact to his knowledge his total liabilities are $3,266.69, and this is accompanied by an exaggeration of the valuation of his resources, so as to make it appear to the party extending the credit that he has resources in excess of his liabilities amounting to some $3,500 when in point of fact his liabilities are equal to, if not in excess of, his resources at the time the statement was made, we have a case where the omissions cannot be attributed to inadvertence or failure of memory.

By section 14b of the Bankruptcy Act it is provided:

"The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reason-

able opportunity to be fully heard, and investigate the merits of the application and discharge the applicant unless he has * * * (3) obtained money or property on credit upon a materially false statement in writing, made by him to any person or representative for the purpose of obtaining credit from such person." Comp. St. 1913, § 9598.

It is evident here that Smith, the bankrupt, obtained credit of Morris & Co. on a statement in "writing made by him to" Morris & Co., or to the representatives of that company acting in the matter, and which written statement was made for the express purpose of obtaining credit from Morris & Co. for the goods sold and delivered. The statements actually made therein were material. The omissions from the statement were material, and, assuming that the written statement is equivalent to a representation that Smith owed no debts of a material amount other than those set forth in the statement, it was "a materially false statement in writing." Smith was called upon to state to the best of his ability all of his liabilities and their amount. He stated that he was owing Morris & Co. for merchandise not due $227, and that he was owing Morris & Co. for merchandise past due $234. He was called upon by the blank placed before him, and which he was to answer, to state what he owed on notes, what he owed on chattel mortgages, what he owed to banks, what he owed on judgments, what he owed for wages, what he owed to relatives or others, what he owed by way of mortgage on real estate, and what he owed to others for merchandise, borrowed money or otherwise. Take, for instance, the printing under liabilities, "Owe on notes." This was in the nature of a question whether or not he owed anything on notes, and by leaving the space opposite this under the head of "Dollars Cents" blank Smith represented that he owed nothing on notes. He was under obligation to disclose the truth, and was called upon to disclose the truth.

[2] It is, of course, true that the statement must be a false statement, and materially false, and the words mean more than simply erroneous or untrue, and import an intention to deceive. See In re Arenson (D. C.) 28 Am. Bankr. Rep. 113, 195 Fed. 609. It is settled law that a person intends to do what he knowingly does do, and that he intends the known and natural consequences of his acts, knowingly and intelligently done. Here it appears that Smith knowingly and intentionally omitted to disclose indebtedness to the amount of some $2,800. The known and necessary consequences of this concealment or failure to disclose was to deceive and mislead Morris & Co. and induce them to extend credit, which as the evidence shows that company otherwise would not have done.

My attention is called to International Harvester Co. of America v. Carlson (C. C. A. 8th circuit) 217 Fed. 736, 133 C. C. A. 430, 33 Am. Bankr. Rep. 178, where it is held that the words "material statement" mean, not a blank, nor an inference from a blank, but a direct statement, either positive or negative, which is false. Conceding that that case was correctly decided on the facts there appearing, and that "material statement" (in writing) is not a blank, nor an inference from a blank, and no one ever supposed it was, in the case at bar we

have a statement, and not a failure to fill out a statement. Benton D. Smith over his signature said, "For the purpose of obtaining credit with you for merchandise * * * I make the following true and *complete* statement of my resources and liabilities: Resources. [Here follows a list, giving kind and nature, with value]. Liabilities"—and here follows the list, with the nature and character of such liabilities, including "Owe on notes," "Chattel mortgage," "Owe to banks," "Owe on judgments," etc., with a blank opposite each, which *is* a statement that the person making the statement owes nothing on such a liability as is described. But this is not all, for the person making up and signing the statement footed up the totals and said: "Total resources, $4,190.00. Total liabilities, $461.00." This is a direct written statement that his total liabilities were $461, when in fact such liabilities, to his knowledge, were over $3,000. This was not "a blank," and did not refer to the amount of liabilities shown in the figures preceding, but to his total liabilities.

[3] But more, the final paragraph of the statement says, "The above statement, printed and written, *is true and correct in every particular,* and you may rely upon it," etc. August 18, 1914, the now bankrupt had on deposit in the First National Bank of Tully the sum of $135. He represented that he had $150. Against the $135 he had drawn and delivered four checks on this account, aggregating $125.23, and if the checks had been paid his balance would have been about $10. This fact he knew.

In my judgment a person makes a willfully false statement when he represents and states in writing, for the purpose of obtaining credit and property, that he has money in bank, when he has drawn and delivered checks which, when presented and paid, will exhaust such credit, and he knows the fact, and does not disclose that he has drawn and delivered such checks. This court cannot put its seal of approval on such statements and transactions and characterize them as other than willfully false. The credit is on the books of the bank *at the time,* but the person making the statement knows that in equity and justice he has transferred it to another. The bankruptcy act was not intended to sanction and permit and condone that species of false statements in writing. It was intended to cover, and in my judgment does cover, them.

[4] At the time the petition was filed the bankrupt had on deposit in the First National Bank of Tully the sum of $15.22. This was not scheduled or turned over to the trustee, and later the bankrupt checked it out and used it for his own personal benefit. True, the sum was small; but it was money and property belonging to the estate of the bankrupt. It was concealed from the trustee. The Bankruptcy Act is not aimed particularly at *large* concealments of property, but at *all* concealments of property. If the amount is small, and inadvertently retained or forgotten, the failure to disclose will not prevent a discharge; but when knowingly and willfully concealed from the trustee, and drawn out and used by the bankrupt for his own personal use, whether the sum be large or small, we have a concealment of property with intent to defraud his creditors, and a case where the bankrupt has

knowingly concealed from his trustee while a bankrupt some of his estate in bankruptcy, and as it was knowingly done, and the money used for his personal benefit, the inference of fraud is inevitable.

The referee, acting as special master, heard the bankrupt and all the witnesses, and has given the matter careful consideration. On going over the evidence, I arrive at the same conclusion as did the special master, and his report is approved, and there will be an order accordingly, confirming same and denying a discharge.