## In re RAMMAGE.

(District Court, S. D. California, S. D. · October 8, 1919.)

### No. 3229.

BANKRUPTCY ☞407(5)—OBTAINING GOODS BY FALSE STATEMENT GROUND FOR
DENIAL OF DISCHARGE.

    Discharge will not be denied bankrupt druggist, under Bankruptcy Act,
§ 14b (3) being Comp. St. § 9598, on the ground he "obtained * * *
property on credit upon a materially false statement in writing, made
by him" to representative of wholesale drug company "for the purpose
of obtaining credit" from such company, where the written statement of
assets and liabilities prepared by the bankrupt for such representative,
although failing to show bankrupt's indebtedness to members of his fami-
ly, did not on its face purport to include all his indebtedness or to state
that no other indebtedness was subsisting.

In Bankruptcy. In the matter of W. H. Rammage, bankrupt. On
report of referee recommending denial of discharge in bankruptcy.
Report overruled, and discharge granted.

W. T. Craig and H. R. Archbald, both of Los Angeles, Cal., for
trustee.

J. W. Morin, of Pasadena, Cal., for bankrupt.

BLEDSOE, District Judge. The referee, as special master, has
recommended that the discharge of the bankrupt be denied; but upon
a consideration of his report, together with the exceptions thereto, I
am constrained to conclude that he was in error in his conclusion, and
that a discharge should be granted.

The objection to discharge urged by the trustee was based upon the
ground, stated in the statute—Bankruptcy Act July 1, 1898, c. 541, §
14b (3), 30 Stat. 550 (Comp. St. § 9598)—that the bankrupt had "ob-
tained * * * property on credit upon a materially false state-
ment in writing, made by him" to a representative of the Western
Wholesale Drug Company "for the purpose of obtaining credit" from
such company. The controlling facts are without conflict. For some
time the bankrupt had been conducting a drug store, doing business
with the wholesale house known as the Western Wholesale Drug Com-
pany. On the 1st of October, 1917, the credit manager of the com-
pany, examining the then current monthly account owing by the
bankrupt, wrote him a letter of the following tenor:

    "The inclosed statement does not make the most favorable showing, and
I trust that you can get a substantial remittance to us at this time. You will
remember that you were going to prepare a financial statement for us, and I
will appreciate it if you be good enough to do so, and then if possible, come
in so that we may talk over the situation."

Some days later, in response to such communication, the bankrupt
called upon the credit manager and had a talk with him about his
business, prospects, etc. He took with him to this conference a certain
memorandum concerning his business, all in his own handwriting, in
so far as handwriting was made use of, but not signed by him. The

memorandum was made upon a sheet, obviously taken from a loose-leaf book of some sort, headed in printing, "Inventory" and containing various columns respecting "quantity," "description," "price," etc., and evidently being a sheet of lined and ruled paper that the bankrupt had casually picked up and made use of for the particular purpose in mind. The written matter in his handwriting was as follows:

| | |
|---|---:|
| Mdse. on hand............................................... | 4,500.00 |
| Fixtures .................................................. | 1,500.00 |
| Fountain carbonator, etc..................................... | 1,250.00 |
| | 7,250.00 |
| Owe for Mdse. not due...................................... | 200.00 |
| "    "    " due ...................................... | 700.00 |
| " bank ................................................ | 500.00 |
| " Marshall ............................................ | 225.00 |
| " Western note ........................................ | 975.00 |
| "    " Drugs ...................................... | 3,785.00 |
| " Fountain ............................................ | 1,030.00 |
| | 7,415.00 |
| Insurance ................................................. | 1,000.00 |
| "    fixtures ...................................... | 1,500.00 |
| "    Mdse. ......................................... | 2,500.00 |
| Rent 61.00 mth. | |

The testimony shows that upon a consideration of this "statement" the situation was canvassed at some length, the credit manager expressing dissatisfaction, but the general result being that the business was to go on as theretofore, and probably, although this matter is not free from doubt, a general understanding was arrived at that the bankrupt should continue to receive credit from the drug company. In any event goods were thereafter in due course ordered by him on credit, and credit was extended to him thereafter for a month or so, and until the filing by him of a voluntary petition in bankruptcy.

The gist of the controversy is that, despite the so-called "statement" failing to show any obligations other than those specifically mentioned and above set forth, the bankrupt at the time was indebted to members of his family for moneys borrowed wherewith he purchased the business in the first place, in a sum in excess of $3,000. The objection to his discharge is founded upon this feature of the transaction—his neglect to incorporate in the statement any account of these family debts. In my judgment, however, an essential feature of the precise offense described in the statute is absent.

The statement prepared by the bankrupt did not, on its face, in any wise, by writing in the hand of the bankrupt or at all, purport to contain a complete and exhaustive account of his business with respect either to his assets or to his liabilities. It did contain a statement of certain things—merchandise on hand, etc., and certain other things; bills owing by him, etc. If there had been any statement in writing, made or signed by him, to the effect that the items given constituted all of his then present indebtedness, a situation would have occurred which would have justified a denial of his discharge; or if he had stated that he had $6,000 of "merchandise on hand," instead of $4,500

worth, as was the fact, a similar result would have been reached. The statute requires, however, in order that discharge may be denied, that the bankrupt must have obtained property on credit "upon a materially false statement in writing made by him." The "materially false statement" thus required is not to be found in writing, in the statement of his business tendered by the bankrupt. There is nothing in the statement at all, as heretofore suggested, to the effect that the figures given were inclusive of all indebtedness, or that no other indebtedness was subsisting. In other words, there is no "false" statement upon the face of the writing.

It may be, although there is little justification for such conclusion, that the bankrupt intended to misrepresent the situation with respect to his total indebtedness, and intended wholly to conceal the debts owing to his family; but, whether that be the case or not, he has not violated the express language of the statute. He did not incorporate a "false statement" into the writing made by him. He may not lawfully be denied a discharge because of mere implications or inferences arising out of his verbal expressions, or even out of the general situation. There must have been falsity evidenced in writing.

This conclusion seems to be sustained by the well-considered opinion of the Circuit Court of Appeals of the Eighth Circuit in International Harvester Co. v. Carlson, 217 Fed. 736, 739, 133 C. C. A. 430.

The report of the referee is overruled, and a discharge of the bankrupt will be granted as prayed for.