### In re HUGHES.

### Appeal of DOCTOR et al.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 59.

1. BANKRUPTCY ⬤22—ADMINISTRATIVE PROCEDURE NOT GOVERNED BY EQUITY RULES.

   The equity rules of the Supreme Court are not rules of court, affecting administrative work of bankruptcy.

2. BANKRUPTCY ⬤415(2)—FORMAL EXCEPTIONS TO MASTER'S REPORT ON APPLICATION FOR DISCHARGE NOT REQUIRED.

   The matter of granting discharges is by the Bankruptcy Act committed to the judge of the District Court, the findings of a commissioner or master, to whom an application is referred, being advisory only, and compliance with formal equity rules in filing exceptions to his report is not required.

3. BANKRUPTCY ⬤408(3)—OMISSION OF WORTHLESS ASSETS NOT GROUND FOR REFUSING DISCHARGE.

   Omission from a bankrupt's schedules of corporate stock having no possible value *held* not a concealment of assets which defeats the right to discharge.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. BANKRUPTCY ⬤⟿408(3)—CONCEALMENT MUST BE OF REAL ASSETS TO DEFEAT DISCHARGE.**

Omission from bankrupt's schedules, although with intent to conceal, of a right in property which bankrupt supposed he owned, but in fact did not, is not a concealment of assets which defeats the right to discharge.

Appeal from the District Court of the United States for the Eastern District of New York.

In the matter of Elizabeth L. Hughes, bankrupt. From an order granting a discharge, Augusta Doctor and another appeal. Affirmed. See, also, 257 Fed. 986.

Certain creditors (appellants here) objected to bankrupt's discharge on various grounds of which two only need be mentioned: (1) She concealed, by omitting from her sworn schedules, certain shares of stock in an incorporated company; (2) she similarly concealed an interest in property created by a transfer by her still living father to a trustee, and of such a nature as to be "real estate," as those words are defined by statute in the state of New York.

These objections were referred for consideration to a "special commissioner," who recommended denial of discharge. Bankrupt, within 60 days of report filed, moved for an order setting it aside and granting discharge, and shortly after expiration of the 60-day period filed exceptions, in apparently intended compliance with equity rule 66 (198 Fed. xxxvii, 115 C. C. A. xxxvii).

The District Judge disapproved the report and granted discharge; this appeal followed, and it is assigned for error, not only that the objections were overruled, but that the court failed to confirm the report as matter of course, for lack of timely exceptions thereto.

Mark G. Holstein, of New York City, for appellants.

Lee & Wadsworth, of New York City (Joseph Day Lee, of New York City, of counsel), for bankrupt.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. **[1, 2]** The administration of bankruptcy is so largely a matter of business that any and every formality in the court of first instance, additional to those prescribed by statute, is to be avoided as far as possible. The matter of discharges is by the act a duty laid on the judge holding the District Court, and commissioners or masters are merely his advisory assistants. We approve of the decision in International Harvester Co. v. Carlson, 217 Fed. 736, 133 C. C. A. 430, and hold that the equity rules of the Supreme Court are not rules of court affecting the administrative work of bankruptcy. This case was fairly and with fair expedition presented to the District Judge, and that was enough.

**[3]** The corporate stock omitted from the schedules was not only worthless, but it utterly lost whatever value it ever possessed by and through the actions of these objecting creditors, when long before bankruptcy they "sold out" the issuing corporation, by foreclosing a mortgage on its property. Our decision in Re McCrea, 161 Fed. 246, 88 C. C. A. 282, 20 L. R. A. (N. S.) 246, is applicable, and overrules the creditors' first objection.

**[4]** The so-called realty also omitted from schedules has a long history that may be best stated in legal effect rather than in detail.

When Mrs. Hughes verified her schedules, she had long before conveyed this interest to her husband. We assume (but do not find) that such conveyance was a mere cover, and that the husband was but a trustee for the bankrupt. We may also assume, without finding, that Mrs. Hughes' intent in making the transfer was to hinder, delay, or defraud her creditors. These assumptions are rather violent on this record, but they are certainly all the creditors could ask.

Contemporaneous with this discharge proceeding, however, was a suit in the courts of New York, to determine what, if any, right or interest Mrs. Hughes ever had in said real estate, and before discharge granted the New York Court of Appeals decided that she never had any interest at all; her conveyance to her husband was a nullity, because there was not, and never had been, anything whereon it could operate. Doctor v. Hughes, 225 N. Y. 305, 122 N. E. 221.

It follows that this bankrupt concealed nothing, because there was nothing to conceal; yet when she swore to her schedules she thought the property value existed. She had (we may assume) "intent" as fully as if her intended act could either help her or harm her creditors. She had the emotion of concealment, but all about nothing.

It is a mistake, and a widespread one, to regard a discharge in bankruptcy as a reward of virtue, or its denial as a punishment for general moral turpitude. Discharge is a legal right attaching to the status of bankrupt, which right the statute requires the court to recognize, unless it be affirmatively shown that the applicant has done one or more of the acts enumerated specifically or by reference in section 14 of the statute (Comp. St. § 9598). The mental operation of thinking property is owned, and desiring to conceal it, when in fact no such property exists, does not fall within any of the prohibitions of that section, which, when speaking of concealed or transferred property, always means something that is or ought to be (in common parlance) "assets of the estate." Cf. In re Dauchy, 130 Fed. 532, 65 C. C. A. 78. There was no error in overruling this objection.

Order affirmed, with costs.